**UNITED STATES of America, Plaintiff,**

v.

**John Anthony BLANK.**

**No. CR 65–372.**

United States District Court
N. D. Ohio, E. D.
June 29, 1966.

See also D.C., 251 F.Supp. 166.

Merle M. McCurdy, U. S. Atty., James L. Oakar, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff.

Jerry Milano, Cleveland, Ohio, for defendant.

CONNELL, Chief Judge.

On October 8, 1965, agents of the Internal Revenue Service descended upon the movant's apartment to execute a search warrant for his premises. For the obvious reason that the conduct of the search transgressed the Fourth Amendment rights of the movant (a point presently conceded by the Government), we granted his Motion to Suppress Evidence on March 4th, 1966. Subsequently, on or about April 18th, 1966, the movant was hailed down to the local offices of the Internal Revenue Service where he was informed that a sizeable assessment was about to be levied against him. He was further informed that the assessment was predicated almost entirely on information gleaned from the papers illegally obtained from his apartment on October 8th, 1965. He then filed this present motion, under favor of Rule 41(e), seeking either a return of the property, or, in the alternative, that the court conduct an *in camera* inspection and destroy all evidence which the court finds to be usable in a gambling operation. The Government has staunchly re-

sisted the return of such property and has vociferously contested the power of the court to order the destruction of contraband; on the contrary, argues the Government, the law permits the use of the illegally seized evidence in the assessment proceeding because it is an action civil in nature in which the taxpayer has no Fourth Amendment rights and to which the exclusionary rule is inapplicable.

■ We must first approach the exclusionary rule under attack here by the Government. The purpose of the exclusionary rule is to put teeth into the Fourth Amendment; the rule is the only efficacious sanction whereby courts may deter the unbridled plunder of private property by law enforcement officials. As stated by the Supreme Court in Mapp v. Ohio, 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961), to withhold the sanction of excluding illegally seized evidence "is to grant the right but in reality to withhold its privilege and enjoyment." The necessity of witholding evidence which law enforcement officials secure by illegal means "is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed. 2d 1669 (1960).

But, argues the Government, these lofty principles have no bearing on a proceeding civil in nature. The Fourth Amendment, and its handmaiden—the exclusionary rule—protect the rights of an accused only in a criminal action and restrict investigative efforts of agents only when they are engaged in the enforcement of the criminal code; there is no place in a civil action for either, nor do they restrict the activities of agents engaged in the collection of revenue through the medium of a civil action or an administrative proceeding. ⸜

■ For reasons too clear, we cannot agree with the Government. Where, as here, there is a correlative civil action open to the Government which imposes a penalty upon the citizen commensurate with the criminal sanctions to which an accused, victimized by an illegal search, would be exposed, then we see no distinguishable difference between the two forms of punishment which excuses the government from complying with constitutional mandates when prosecuting their action in a civil forum. Were this not the case, all suspected violators of revenue laws would be subject to the precise evil at which the Fourth Amendment is directed—the unreasonable disruption of the privacy of the home—no matter how slim or unfounded might be the suspicion of their illegal activity. If there is no constitutional check on the "investigative" efforts of federal administrative officials prosecuting civil claims, and there exist forfeiture and deficiency proceedings, civil in form, which inflict an onerous monetary penalty upon an accused which approximates the visitations of the criminal code, there is no practical restraint upon such officials. There is no rule of reasonableness. Searches can be instigated at the capricious whim of any administrative official or enforcement agent rather than as a result of the informed deliberation of "a neutral and detached magistrate." Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). If these speculative suspicions prove to be accidentally accurate, and the invasion force discovers evidence of activity which is both offensive to the criminal code and also indicative of evasion of taxes or tariffs accountable in a civil proceeding, the Government need not bother with criminal proceedings and may avoid the exclusionary rule embodied in Rule 41 of the Federal Rules of Criminal Procedure. If the Government's assessment of the boundaries of the Fourth Amendment is correct, then it may take the accused down a civil avenue to impose its penalties while keeping itself free from the impinging requirement of reasonableness which the Fourth Amendment imposes.

■■ If, however, the capricious invasion of a private dwelling is mistaken, what solace is there for the unfortunate victim? What comfort does the law

proffer to the innocent citizen shaken by the felonious intrusion of his hearth? None.[1] What deterrent against this unreasonable activity of the government does the law offer to the innocent? None, if the government has described accurately the perimeter of the Fourth Amendment and the correlative utility of the exclusionary rule. The argument advanced by the Government cannot withstand the searchlight of commonsense nor can it be reconciled with the latest pronouncement on the subject by the United States Supreme Court. For these reasons we must reject the Government's argument that they may use admittedly illegally seized evidence in an assessment proceeding.

Our decision today follows necessarily from the reasoning explicitly expressed by the Supreme Court in One 1958 Plymouth Sedan v. Com. of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). There the Commonwealth of Pennsylvania sought to forfeit an automobile which had allegedly been used in the illegal transportation of liquor upon which no tax had been paid. The state trial judge found that the evidence used to support the charge had been the product of an illegal search, and consequently inadmissible, so he dismissed the libel. The Pennsylvania Supreme Court reversed, holding that the exclusionary rule applied only to criminal proceedings, so that the illegal evidence could be used in a civil action. The United States Supreme Court reversed, holding that the beneficence of the exclusionary rule must be extended to civil proceedings which are interrelated to criminal proceedings. The court began its discussion with the statement of a similar issue raised and decided in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746 (1886):

> * * * whether the compulsory production of a man's private papers for their evidentiary use against him in a *proceeding to forfeit his property for alleged fraud against the revenue laws* constituted an unreasonable search and seizure. (380 U.S. p. 696, 85 S.Ct. p. 1248) (emphasis supplied)

Finding that the court had decided in *Boyd* that such compulsory production constituted an unreasonable search and seizure, and evidence so obtained inadmissible, the court went on to the second question—"whether evidence * * * the obtaining of which violates the Fourth Amendment may be relied upon to sustain a forfeiture." (p. 698, 85 S.Ct. p. 1249) The court reiterated its finding in *Boyd,* and held that it may not. The reasoning of the court controls here:

> It would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, *requiring the determination that the criminal law has been violated, the same evidence would be admissible.* (p. 701, 85 S.Ct. p. 1251) (emphasis supplied)

In so holding, the court quoted and relied upon language used by Mr. Justice Bradley in *Boyd,* which we deem persuasive in the instant case:

> If the government prosecutor elects to waive an indictment, and to file a civil information against the claimants,— that is, civil in form,—can he by this device take from the proceeding its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be. The information, though technically a civil proceeding, is in substance and effect a criminal one. * * As, therefore, suits for penalties and forfeitures, incurred by the commission of offenses against the law, are of

---

1. The well known doctrine of Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed. 2d 1434 (1959) prohibits civil suits against government officials acting within the scope of their prescribed duties, so that a citizen aggrieved by an illegal intrusion has no remedy in trespass against federal enforcement agents. Cf. also, Mapp v. Ohio, supra; Wolf v. Colorado, 338 U.S. 25, 42, 69 S.Ct. 1359, 93 L. Ed. 1782 (1949) (dissenting opinion, Murphy, J.)

this quasi-criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the fourth amendment of the constitution * * *.

And we so hold in the instant case.

 The success of the Government's attempted deficiency assessment for non-payment of federal excise taxes requires "the determination that the criminal law has been violated," to wit, that the movant has been in the business of accepting wagers without registering with Internal Revenue, without submitting his daily records to their scrutiny, and without paying the excise tax. Consequently, we do not think that federal officials may elect to proceed in an administrative forum and "by this device take from the proceeding its criminal aspect and deprive" the accused of the privileges which the Constitution purports to secure for him. We hold that the contemplated imposition of taxes and penalties upon the movant is an action "for penalties * * * incurred by the commission of offenses against the law" and that the accused is entitled to all that the Fourth Amendment guarantees to him.

As circumstances too often develop, courts must forge a weapon for the protection of the innocent at the behest of those not altogether free from the tainting indicia of illegal activity. As a result of the *in camera* inspection of the material in issue, it is clear that substantial portions constitute memoranda of wagers and other gambling paraphernalia. This should make the message all the more forceful.

The only protection for the innocent, the only safeguard for the unwarrantedly suspect premises, is the constant reminder to law enforcement officials that if they transgress the proscriptions by which the law governs their conduct, the guilty shall go free. If overzealousness engenders governmental disregard for the traditions of an orderly free society, then the only effective manner of harnessing this inordinate zeal is to persistently demonstrate to the zealous that their efforts to capture the lawless will be frustrated if they themselves cannot resist the temptation to break the law.

For the foregoing reasons, we hold that that portion of the material seized from movant's apartment which constitutes evidence of wagering may not be used in any proceeding against him, including the intended assessment for deficient excise taxes. Since these papers are contraband and may not be returned to movant, we entrust them to the United States Marshal, and we direct him to destroy them. That portion of material seized which is not related to any gambling activity will be returned to the movant.