**Louie E. SIMS, Petitioner,**

v.

**COLLECTION DIVISION OF the UTAH STATE TAX COMMISSION, Respondent.**

No. 900324.

Supreme Court of Utah.

Oct. 22, 1992.

R. Paul Van Dam, Leon A. Dever, John C. McCarrey, Salt Lake City, for Tax Com'n.

G. Fred Metos, Salt Lake City, for Sims.

DURHAM, Justice:

Petitioner Louie E. Sims seeks review of a formal order of the Utah State Tax Commission ("the Commission") affirming a tax and penalty assessment under the Illegal Drug Stamp Tax Act ("the Act"). Utah Code Ann. §§ 59–19–101 to –107. We reverse the decision of the Commission and vacate the tax and penalty assessed.

On July 27, 1988, the Utah Highway Patrol and the Juab County Sheriff's Department set up a roadblock on Interstate Highway 15 approximately two miles outside of Nephi, Utah. When Sims' car was stopped at the roadblock, the officers observed an open container of alcohol in the back seat area. Sims was asked to exit the car, at which time he consented to a search of the interior. There, the officers discov-

ered the remnants of one or two marijuana cigarettes. Sims then consented to a search of the trunk. When the latter search revealed two small plastic bags containing marijuana, Sims stated that he wanted the search stopped. Asserting that they had probable cause to continue, the officers inspected the spare tire well, uncovering a kilogram brick of cocaine. Sims was then arrested for driving under the influence of alcohol and possession of a controlled substance with intent to distribute.

Under the Act, anyone who purchases, acquires, transports, or imports illegal drugs into the state must pay a tax and affix drug tax stamps to the drugs. Utah Code Ann. § 59–19–105(1). The required stamps were not attached to or contained with the cocaine and marijuana found in Sims' car. On August 30, 1988, Sims was served with a notice and demand for payment of an illegal drug stamp tax and a corresponding penalty. The tax, assessed pursuant to section 59–19–103 of the Act, and the penalty, under section 59–19–106(1) of the Act, total almost $400,000.

Upon being served with notice of the tax and penalty, Sims filed a petition for redetermination with the Commission. He argued, among other things, that the roadblock stop was an unconstitutional seizure and that the evidence seized pursuant to it should, under the exclusionary rule, be excluded from the tax proceeding. Because the Commission held that the exclusionary rule does not apply to proceedings under the Act, it did not reach the question of whether the roadblock stop was constitutional. The State did not address the issue of the constitutionality of the roadblock stop in either its brief to the Commission or its brief to this court. Rather, the State asks us to decide the case solely on the basis of the exclusionary rule.

We believe that it would be irresponsible for us to simply assume that the roadblock was unconstitutional without analysis. Sims has preserved the issue on appeal, and although the Utah Court of Appeals has addressed the question of suspicionless roadblock stops a number of times, *see*

*State v. Park*, 810 P.2d 456 (Utah Ct.App.), *cert. denied*, 817 P.2d 327 (Utah), 826 P.2d 651 (Utah 1991); *State v. Kitchen*, 808 P.2d 1127 (Utah Ct.App.1991); *State v. Sims*, 808 P.2d 141 (Utah Ct.App.1991),[1] this is a question of first impression in this court. For the benefit of the lower courts, counsel, and law enforcement officers generally, we undertake a constitutional analysis.[2] We conclude that as a matter of law, the roadblock stop was unconstitutional under the Utah Constitution. Further, we hold that there was insufficient attenuation between the illegal stop and any consent to purge the taint of illegality.

Recently, this court interpreted the search and seizure provision of the Utah Constitution differently than the federal courts have characterized the corresponding federal provision. In *State v. Larocco*, 794 P.2d 460 (Utah 1990), we held that under article I, section 14 of the Utah Constitution, a police officer could not open the door of a car parked on a street to inspect the vehicle identification number. This result contrasted with the United States Supreme Court's holding that the Fourth Amendment was not violated under similar facts. *See New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). Similarly, in *State v. Thompson*, 810 P.2d 415, 416–18 (Utah 1991), we held that a depositor has a legitimate expectation of privacy in his bank records under the Utah

Constitution despite the United States Supreme Court's contrary ruling with regard to the Fourth Amendment. *See United States v. Miller*, 425 U.S. 435, 442, 96 S.Ct. 1619, 1623, 48 L.Ed.2d 71 (1976).

Both the Utah and United States Constitutions contain a "reasonableness" and a "warrant" requirement. In recent years, the United States Supreme Court has vacillated between the warrant approach and the reasonableness approach in developing federal search and seizure law regarding automobiles. *See Larocco*, 794 P.2d at 469. The result reached in *Larocco* reaffirmed this court's commitment to the warrant approach under our state constitution. *Id.* at 470 (" 'Warrantless searches and seizures are per se unreasonable unless exigent circumstances require action before a warrant can be obtained.' " (quoting *State v. Christensen*, 676 P.2d 408, 411 (Utah 1984))). The concept of an expectation of privacy continues to be the threshold criterion for determining whether article I, section 14 applies. *Id.* at 469. If that threshold is met, warrantless searches of automobiles will be allowed only if probable cause and exigent circumstances exist. *Id.* at 470.

In the case of a suspicionless investigatory roadblock, neither the first nor the second prong of the warrant requirement is met.[3] There is no articulable, individual-

---

1. In fact, in the criminal counterpart of the civil proceeding that resulted in this appeal, Sims raised the constitutionality question. Prior to his criminal trial, he moved to suppress evidence of the drugs seized in the roadblock, alleging that the evidence was seized in violation of his constitutional rights. In response, the prosecution asserted that the roadblock stop was lawful and that even if it was unlawful, Sims voluntarily consented to the search. After an evidentiary hearing, the trial court denied the motion to suppress. Sims was convicted as charged. He appealed the judgment to the Utah Court of Appeals. The court of appeals reversed the criminal conviction, holding that the drugs seized from Sims' car should have been suppressed because the roadblock stop was an unreasonable seizure under the Fourth Amendment of the United States Constitution and under article I, section 14 of the Utah Constitution. *State v. Sims*, 808 P.2d 141, 145–50 (Utah Ct. App.1991). Moreover, the court of appeals held that the attenuation between Sims' detention

and any consent he gave to search his car was insufficient to purge the taint of the illegality of the detention. *Id.* at 150–52.

2. The evidence that was introduced at the suppression hearing in the criminal case was entered into evidence in the tax proceeding as part of the stipulated facts. We therefore have a complete factual record from which we can assess the constitutionality of the roadblock stop.

3. We limit our analysis in this case to the suspicionless, investigatory, nonemergency roadblock. It does not extend to emergency roadblocks that might be used, for example, to apprehend a fleeing felon. Nor do we address any existing authority to conduct roadblocks for traffic control purposes. Finally, we do not address the constitutionality of port of entry or fish and game roadblocks conducted pursuant to statute. *See State v. Sims*, 808 P.2d at 150.

ized suspicion of wrongdoing to establish probable cause, and because roadblocks are planned in advance, no exigent circumstances justify an immediate search. The requirement that a disinterested party review and approve the need to search was designed to prevent arbitrary and oppressive interference with individual privacy and personal security and to guarantee that a decision to search private property is justified by a reasonable governmental interest. *Cf. Camara v. Municipal Court,* 387 U.S. 523, 528, 539, 87 S.Ct. 1727, 1730, 1736, 18 L.Ed.2d 930 (1967).

The State argues in this case that suspicionless investigatory roadblocks are authorized by statute. We do not reach the question of whether such statutory authorization could constitutionally be accomplished by the legislature, because we conclude that no such authorization has been attempted.

Although certain roadblocks are authorized by statute,[4] at the time of the search in question Utah law did not expressly authorize suspicionless investigatory roadblocks.[5] A number of statutory provisions grant law enforcement agencies and offi-

cers general police powers to provide for public safety and welfare.[6] Other states have inferred legislative authority to conduct roadblocks from such statutory grants of general police powers. *See, e.g., People v. Estrada,* 68 Ill.App.3d 272, 24 Ill.Dec. 924, 929–30, 386 N.E.2d 128, 133–34, *cert. denied,* 444 U.S. 968, 100 S.Ct. 459, 62 L.Ed.2d 382 (1979). Because of the primacy in Utah of the warrant requirement and the grave potential for injury to individuals' constitutional interests, however, we decline to infer authority for suspicionless investigatory stops from broad statutory directives.[7] No authority to conduct suspicionless investigatory roadblocks of the type conducted here exists; hence, their use is patently unlawful. Whether constitutionally sufficient standards and guidelines could be incorporated in statutory form is a question we leave for future consideration.

■■■ In conjunction with the question of the legality of the roadblock in this case, we must address the question of whether Sims' subsequent consent to a search of his car alleviates the taint of the prior illegal seizure.[8] In *State v. Arroyo,* 796 P.2d 684

---

4. There is statutory authorization to stop and inspect all large vehicles and vehicles transporting livestock at ports of entry for, among other things, driver qualifications, registration, tax payments, size and weight, and safety. Utah Code Ann. § 27–12–19. Moreover, the Division of Wildlife is given authority to conduct roadblocks to enforce the fish and game laws. *Id.* § 23–20–19.

5. We note, however, that in 1992 the legislature authorized the use of administrative traffic checkpoints under prescribed circumstances. *See* Utah Code Ann. §§ 77–23–101 to –105.

6. Sheriffs and their deputies are granted authority to preserve the peace and make all lawful arrests. Utah Code Ann. § 17–22–2. Municipal police officers are granted authority "at all times to preserve the public peace, prevent crime, detect and arrest offenders, ... protect persons and property, remove nuisances existing in the public streets, roads and highways, enforce every law relating to the suppression of offenses and perform all duties required of them by ordinance or resolution." *Id.* § 10–3–914.

7. On this point, we agree with the following statement of the Oregon Supreme Court: "[S]ome procedures may invade the personal

freedoms protected from government interference by the constitution. Roadblocks are seizures of the person, possibly to be followed by a search of the person or the person's effects. For this reason, the authority to conduct roadblocks cannot be implied." *Nelson v. Lane County,* 304 Or. 97, 743 P.2d 692, 695 (1987); *accord State v. Henderson,* 114 Idaho 293, 756 P.2d 1057 (1988); *State v. Smith,* 674 P.2d 562 (Okla.Crim.App.1984). Moreover, in the existing statutes, the Utah Legislature has provided that suspicion of wrongdoing is a condition precedent for authority to stop a person or vehicle. *See* Utah Code Ann. § 41–3–105(8)(b), 77–7–15. This serves as additional support for our rejection of implicit statutory authority for investigatory suspicionless roadblocks.

8. Two factors determine whether a consent to search is lawfully obtained following initial misconduct: (1) whether the consent was voluntary, and (2) whether the consent was obtained by exploitation of the prior illegality. *State v. Arroyo,* 796 P.2d 684, 688 (Utah 1990). Here, there is no allegation that the consent was coerced from Sims or that it was otherwise obtained involuntarily. Our discussion focuses, therefore, on the second factor, whether the prior illegality was exploited to obtain the concededly voluntary consent.

(Utah 1990), we held that the pretextual stopping of a vehicle violated the defendant's Fourth Amendment rights. In addressing the question of the effect of the defendant's subsequent voluntary consent to search the vehicle, we stated that under *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the factors to be considered in determining whether the primary illegality is exploited in such a situation are the temporal proximity of the illegal seizure and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Arroyo*, 796 P.2d at 690 n. 4 (citing *Brown*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62). In considering the factors listed in *Brown*, account should also be taken of whether the illegal seizure brought about police observation of the particular object they sought consent to search, whether the consent was volunteered rather than requested by the detaining officers, whether the detainee was made aware of the fact that he could decline to consent and thus prevent an immediate search, and whether the police purpose underlying the illegality was to obtain the consent. 3 Wayne R. LaFave, *Search and Seizure* § 8.2(d), at 193–94 (2d ed. 1987); *see also People v. Borges*, 69 N.Y.2d 1031, 517 N.Y.S.2d 914, 511 N.E.2d 58, 59–60 (1987). Of course, the relevant factors will vary from case to case, and each case must be considered on its particular facts and circumstances. *Borges*, 517 N.Y.S.2d at 915–916, 511 N.E.2d at 60.

■ Although the factors listed in *Brown* and expanded upon in Professor LaFave's treatise were developed under a Fourth Amendment analysis, we believe that they are equally appropriate under the Utah Constitution.[9] Applying the relevant considerations to the facts and circumstances of this case, we hold that Sims' consent was not sufficiently attenuated from the prior illegality to purge the taint.

9. There is no question that a state constitution must provide at least the same scope of protection as the federal constitution. Despite our borrowing a Fourth Amendment analysis in this

Because the burden is on the State to show that evidence obtained following illegal police conduct is attenuated from the illegality, *Brown*, 422 U.S. at 604, 95 S.Ct. at 2262, and because the issue was not addressed by the Commission here, the State would have us remand this question for an examination of the effect of Sims' consent. However, as we did in examining the constitutionality of the roadblock, we find that the record before us is sufficient to determine the issue of consent as a matter of law. *See State v. Sims*, 808 P.2d at 151.

Regarding the temporal proximity factor, Sims' consent was closely related in time to the initial stop. He consented during the unlawful detention with no intervening circumstances. The purpose of the roadblock was to obtain evidence of criminal violations, a purpose that does nothing to reduce the "flagrancy" of the constitutional violation it precipitated. Trooper Howard's request for consent to search Sims' vehicle was based upon the smell of alcohol, the sight of an open liquor bottle, and Sims' admission that he was carrying alcohol. Howard's opportunity to make these observations and to question Sims came about as a direct result of the illegal seizure. Sims did not spontaneously volunteer his consent, nor was he made aware of the fact that he could decline to consent.

Given the totality of these circumstances in light of the relevant considerations, the voluntary consent in this case clearly was arrived at by exploitation of the unconstitutional roadblock. The consent did not, therefore, purge the evidence of the taint of illegality. The question then becomes whether such evidence, seized in violation of article I, section 14 of the Utah Constitution, is admissible in a proceeding under the Act. We conclude that the state exclusionary rule adopted by this court in *State v. Larocco*, 794 P.2d 460 (Utah 1990), applies to hearings before the Commission under the Act.

case, we obviously reserve the option to provide broader protections under the state constitution in the future.

■ Under the exclusionary rule, evidence is inadmissible in some proceedings if it is seized in violation of the constitutional protection against unreasonable searches and seizures. Although the rule has been developed primarily in federal law, it also has application under the state constitution.[10] As we observed in *Larocco,* a number of states have used their own constitutions to develop independent state search and seizure law. *Id.* at 465.[11] Our treatment of a separate state exclusionary rule permits us to benefit from federal analysis without being bound by it in our construction of the Utah Constitution.

The State argues that a proceeding under the Act is civil in nature and that the exclusionary rule therefore does not apply. Sims asserts, on the other hand, that such proceedings are criminal or quasi-criminal and that we should interpret the state exclusionary rule as excluding illegally seized evidence from such proceedings. Our task is to determine if, because of the purpose of the rule and the nature of the proceedings, the exclusionary rule should apply to proceedings under the Act.

At least one state court has interpreted its constitution to provide what appears to be a blanket exclusion of unlawfully seized evidence from all criminal and civil proceed-

ings. *See Turner v. City of Lawton,* 733 P.2d 375, 381 (Okla.1986), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987) (evidence of illegally seized amphetamines inadmissible in an administrative termination proceeding). *But see* Scott Meacham, Note, *Evidence: The Exclusionary Rule in Civil Administrative Hearings: Turner v. City of Lawton,* 40 Okla. L.Rev. 320 (1987) (criticizing the apparent scope of the Oklahoma court's ruling in *Turner*). That decision is unique. In fact, only a few state courts have as yet explicitly considered the question of whether their state exclusionary rules extend to civil proceedings. Several courts have—expressly or implicitly—determined that rights under the state and federal constitutions on this issue are the same. *See Hughes v. Tupelo Oil Co.,* 510 So.2d 502, 505 (Miss.1987) (illegally obtained results of blood alcohol test were admissible in civil wrongful death action, but "evidence seized by the State in violation of the *state* and federal constitutions is inadmissible in quasi-criminal proceedings" (emphasis added)); *Pullin v. Louisiana State Racing Comm'n,* 484 So.2d 105 (La.1986) (under federal case law, evidence seized in violation of state and federal constitutions is admissible in civil proceeding before Louisiana State Racing

---

**10.** In recent years, there has been a trend in the federal courts to limit the application of the federal exclusionary rule. One example of that trend is the creation, in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), of a good faith exception under which an invalid search warrant executed in good faith does not violate the Fourth Amendment of the United States Constitution. As a result of the good faith exception, evidence seized under such a warrant is admissible in federal court against the person whose constitutional rights would otherwise have been violated. Although this court has never decided the question, *see State v. Thompson,* 810 P.2d 415, 420 (Utah 1991), a number of state courts have declined to adopt the exception under their state constitutions. *See, e.g., People v. Sundling,* 153 Mich. App. 277, 395 N.W.2d 308, 314 (1986); *State Patrol v. State, D.P.S.,* 437 N.W.2d 670, 676 (Minn.Ct.App.1989); *State v. Novembrino,* 105 N.J. 95, 519 A.2d 820, 857 (1987); *People v. Bigelow,* 66 N.Y.2d 417, 497 N.Y.S.2d 630, 637, 488 N.E.2d 451, 458 (1985); *State v. Carter,* 322 N.C. 709, 370 S.E.2d 553, 561 (1988); *State v. White,* 97 Wash.2d 92, 640 P.2d 1061, 1069 (1982).

**11.** The Massachusetts Supreme Court, for example, has recently developed a line of cases establishing rules for excluding evidence based on the state constitution independent of federal law. *See, e.g., Commonwealth v. Fini,* 403 Mass. 567, 531 N.E.2d 570 (1988) (tape recordings received by warrantless electronic surveillance were legal under United States Constitution but violated state constitution and were inadmissible to impeach defendant's testimony); *Commonwealth v. Ford,* 394 Mass. 421, 476 N.E.2d 560 (1985) (seizure of rifle from vehicle's locked trunk was unreasonable under state constitution, and rifle was inadmissible as evidence). Rather than relying on federal sources of authority, that court has employed a "state-specific" approach and undertaken an independent state constitutional construction. *See* Robert J. Deittrich, Note, *The Newly Discovered Exclusionary Rule of Article 14 of the Massachusetts State Constitution: A Case Note Trilogy of Commonwealth v. Upton, Commonwealth v. Sheppard, and Commonwealth v. Ford,* 20 Suffolk U.L.Rev. 617, 633–34 (1986).

Commission), or essentially coextensive. *See Ex Parte Caffie,* 516 So.2d 831, 837 (Ala.1987) (exclusionary rule inapplicable in probation revocation hearing under both federal and state constitutions because state constitution "protects similar, if not identical, interests" to Fourth Amendment of United States Constitution). Only a few states have analyzed the scope of the rule separate and apart from the federal constitution and federal case law.

Developments in Oregon suggest that its exclusionary rule applies to civil as well as criminal proceedings. Several recent cases have characterized the purpose of the Oregon exclusionary rule as restoring a defendant's personal right rather than as deterring unlawful police conduct. *State v. Tanner,* 304 Or. 312, 745 P.2d 757, 758 (1987); *State v. Davis,* 295 Or. 227, 666 P.2d 802, 809 (1983); *see also* Ronald W. Messerly, Development in the Law, *Development of the Right to Exclude Illegally Seized Evidence in Oregon under Article I, section 9 of the Oregon Constitution,* 25 Willamette L.Rev. 697, 709 n. 82 (1989). Another scholar has argued that a per se application of the exclusionary rule might be appropriate under the Oregon Constitution regardless of the nature (civil or criminal) of the proceeding in which the illegally seized evidence is sought to be admitted. *See* H. Lee Cook, Comment, *The Oregon Variation of the Fourth Amendment Exclusionary Rule in Administrative Proceedings,* 65 Or.L.Rev. 681, 683 (1986).

In 1982, the voters of California added section 28(d) to article I of the California Constitution, providing that relevant evidence shall not be excluded from any *criminal* proceeding. Subsequently, the California Supreme Court ruled that evidence must still be excluded as required by the federal constitution and, moreover, that the constitutional amendment did not affect the precedent in that state regarding the applicability of the exclusionary rule to certain *civil* proceedings. *In re Lance W.,* 37 Cal.3d 873, 210 Cal.Rptr. 631, 643–44, 694 P.2d 744, 756–57 (1985).[12] The *Lance* court considered the applicability of the rule to civil proceedings in terms of the state constitution, reaching the conclusion that under the California Constitution, the exclusionary rule extends only to quasi-criminal proceedings, not to other civil proceedings. *Id.* 210 Cal.Rptr. at 643, 694 P.2d at 756; *accord Governing Bd. v. Metcalf,* 36 Cal. App.3d 546, 111 Cal.Rptr. 724 (1974) (evidence of lewd acts by a schoolteacher obtained in violation of California and federal constitutions admissible in administrative hearing to revoke teaching license).

In *Whisenhunt v. State,* 746 P.2d 1298 (Alaska 1987), the Alaska Supreme Court extended the application of the exclusionary rule to a civil license revocation proceeding. It is not entirely clear from the opinion whether the Alaska court based its decision exclusively on state law or on both federal and state law. In addition to considering the federally accepted policy of deterrence, the Alaska court relied on its own state policy of "fundamental fairness." *Id.* at 1300. Because this is not a policy relied on by the federal courts when applying the exclusionary rule to noncriminal proceedings, it is reasonable to conclude that the Alaska court was articulating state law.

This court first addressed the question of a state exclusionary rule in *Larocco,* where we expressly held that "the exclusion of illegally obtained evidence is a necessary consequence of police violations of article I, section 14" of the Utah Constitution. 794

---

**12.** At first, the California court extended the exclusionary rule to forfeiture proceedings, reasoning that they were criminal in nature. *See People v. One 1960 Cadillac Coupe,* 62 Cal.2d 92, 41 Cal.Rptr. 290, 293, 396 P.2d 706, 709 (1964). In *People v. Moore,* 69 Cal.2d 674, 72 Cal.Rptr. 800, 805, 446 P.2d 800, 805 (1968), *overruled on other grounds, People v. Thomas,* 19 Cal.3d 630, 139 Cal.Rptr. 594, 600 n. 8, 566 P.2d 228, 234 n. 8 (1977), the court held that evidence illegally seized under the Fourth Amendment was inad-

missible in a civil proceeding to commit a narcotic addict because that proceeding was quasi-criminal in nature. Later, the court declined to extend the exclusionary rule to parole revocation proceedings, *In re Martinez,* 1 Cal.3d 641, 83 Cal.Rptr. 382, 388, 463 P.2d 734, 740 *cert. denied sub nom. Martinez v. Craven,* 400 U.S. 851, 91 S.Ct. 71, 27 L.Ed.2d 88 (1970), or to state bar proceedings, *Emslie v. State Bar,* 11 Cal.3d 210, 113 Cal.Rptr. 175, 186, 520 P.2d 991, 1002 (1974).

P.2d at 472. In *Larocco*, the warrantless opening of an unlocked car door to inspect a vehicle identification number was held to constitute an unreasonable search under that provision of our state constitution. We held that the trial court had incorrectly admitted evidence of the vehicle identification number in a criminal trial for car theft. The *Larocco* decision expressly reserved the question of the nature and scope of the exclusionary rule under the state constitution, holding only that it exists. *Id.* at 473. We now extend the state exclusionary rule to proceedings under the Illegal Drug Stamp Tax Act, based on the reasoning that illegally obtained evidence should be excluded from a civil proceeding if the proceeding is in effect criminal or if the exclusion is necessary to deter future unconstitutional searches. Our treatment of the exclusionary rule in this case is based solely on state law. Federal law cited is relied upon only for its persuasive value.

Because of the difference in potential penalties, the criminal defendant is often afforded greater protection than the civil defendant. *See generally United States v. One Assortment of Firearms*, 465 U.S. 354, 358–59, 104 S.Ct. 1099, 1103, 79 L.Ed.2d 361 (1984) (based on difference in relative burdens of proof in criminal and civil actions, neither collateral estoppel nor double jeopardy bars a civil remedial forfeiture proceeding initiated following acquittal on related criminal charges). Where the aims and objectives of a civil penalty are closely aligned with those of the criminal law, however, the protections afforded by the criminal law ought to be extended to the quasi-criminal proceeding. For this reason, the United States Supreme Court interpreted the federal exclusionary rule to include forfeiture proceedings in *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), stating, "[A] forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." *Id.* at 700, 85 S.Ct. at 1250.

Although forfeiture proceedings are frequently cited as the prototype, other kinds of civil proceedings have been characterized as quasi-criminal. *See Powell v. Zuckert*, 366 F.2d 634, 640 (D.C.Cir.1966) (employee discharge hearing); *Iowa v. Union Asphalt & Roadoils, Inc.*, 281 F.Supp. 391, 407 (S.D.Iowa 1968) (antitrust proceeding), *aff'd as to exclusionary rule issue sub nom. Standard Oil Co. v. Iowa*, 408 F.2d 1171 (8th Cir.1969); *United States v. Blank*, 261 F.Supp. 180, 184 (N.D.Ohio 1966) (wagering excise tax assessment proceeding); *Rinderknecht v. Maricopa County Employees Merit Sys.*, 21 Ariz. App. 419, 520 P.2d 332, 334–35 (employee discharge hearing), *vacated after settlement*, 111 Ariz. 174, 526 P.2d 713 (1974); *People v. Moore*, 69 Cal.2d 674, 72 Cal. Rptr. 800, 805, 446 P.2d 800, 805 (1968) (proceeding to commit narcotic addict), *overruled on other grounds, People v. Thomas*, 19 Cal.3d 630, 139 Cal.Rptr. 594, 600 n. 8, 566 P.2d 228, 234 n. 8 (1977); *Finns Liquor Shop, Inc. v. State Liquor Authority*, 24 N.Y.2d 647, 301 N.Y.S.2d 584, 588, 249 N.E.2d 440, 443 (administrative proceedings to suspend or cancel liquor licenses), *cert. denied*, 396 U.S. 840, 90 S.Ct. 103, 24 L.Ed.2d 91 (1969). The civil tax proceeding at issue in this case should be included in that group.

The Act at issue in this case is similar to the criminal law in its objectives. It seeks to punish and deter those in possession of illegal drugs. *Cf. Deeter v. Smith*, 106 Wash.2d 376, 721 P.2d 519, 520–21 (1986) (forfeiture proceedings brought pursuant to the state's Uniform Controlled Substances Act "are quasi-criminal in nature since their purpose is to penalize individuals who participate in the illegal transportation of controlled substances"). The Commission asserts that the objective of the Act is to raise revenue, but the assessment scheme and penalty provisions are far too onerous to justify such a conclusion.[13] The fact that section 59–19–106(1) requires those who violate the Act to pay a 100 percent penalty in addition to the base tax reveals that one objective of the Act is to

---

**13.** The tax and penalty assessed against Sims in this case, for example, total almost $400,000.

punish and deter those in possession of illegal drugs. The fact that the legislature has chosen to obtain this result by what it terms a "tax" and a "penalty" does not change the character of the result.

The quasi-criminal nature of the tax proceeding in this case is further evidenced by the fact that enforcement of the Act is inextricably connected with proof of criminal activity. *See Kuntz v. State Highway Comm'r,* 405 N.W.2d 285, 289 (N.D.1987) ("[T]he civil and criminal consequences [of a refusal to take an intoxilyzer test] are so intermingled that they are not perceptibly different to a lay person."). Violation of the Act necessarily involves criminal conduct and a violation of criminal law. Compliance with the Act presupposes the possessor's knowledge of the possession of illegal drugs and therefore requires a violation of criminal law.[14] "It would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the [civil] proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible." *Plymouth Sedan,* 380 U.S. at 701, 85 S.Ct. at 1251. Given that an essential element of a criminal offense must be established by either violation of or compliance with the Act, we are convinced that enforcement proceedings under the Act must be viewed as quasi-criminal and the exclusionary rule should therefore apply.

One of the frequently cited purposes of the exclusionary rule is to deter future

unlawful seizures. *See, e.g., United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046, *reh'g denied,* 429 U.S. 874, 97 S.Ct. 196, 50 L.Ed.2d 158 (1976); *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974); *Caffie,* 516 So.2d at 832; *Pullin,* 484 So.2d at 107. In addition to the general need for protection of individual rights under article I, section 14, there is a specialized need for ensuring restraint by law enforcement officials in connection with the Act. Law enforcement entities have a particularized interest in the use of the illegally obtained evidence in the civil tax proceeding under section 59–19–105(6)(a)(ii). That section provides that 60 percent of the taxes, interest, and penalties collected are to be distributed "to the law enforcement agency conducting the controlled substance investigation, to be used and applied by the agency in the continued enforcement of controlled substance laws." *Id.* In view of the financial motivation given to local law enforcement agencies to acquire evidence of tax violations, the application of the exclusionary rule to drug stamp tax proceedings is likely to provide a significant and substantial additional deterrent to unconstitutional seizures.[15] This is a second and independent reason to apply the exclusionary rule to proceedings under the Act.

■ We hold that illegally seized evidence must be excluded under article I, section 14 of the Utah Constitution where the proceeding in which exclusion is sought

**14.** In order to comply with the Act, those in possession of illegal drugs must purchase Utah Drug Stamps and "affix the official indicia [the drug stamps] on the ... controlled substances evidencing the payment of the tax required under this chapter." Utah Code Ann. § 59–19–105(1).

**15.** In its brief, the State argues that because section 59–19–105(6) did not become effective until April 24, 1989, we should not consider its effect on Sims' case. While it is true that the amendment was not effective on July 27, 1988, when the cocaine and marijuana were seized, nor on August 29, 1988, when the tax and penalty became due and payable, the language of the statute does not necessarily lead to the conclusion, as the State would assert, that any monies eventually paid in this case will not be shared

with law enforcement agencies. The language of the statute, rather, provides for a sharing of the amounts "collected" under the Act. This language implies that such a division might occur on amounts which are *assessed* prior to the effective date of the amendment but are not *collected* until after that time.

Moreover, deterrence is by definition the discouragement or prevention of *future* acts. Our application of the exclusionary rule in this case obviously cannot deter any unconstitutional seizures that have already occurred. Our purpose in citing a deterrence rationale is with regard to future activity. The applicability or inapplicability of section 59–19–105(6) to the specific facts of this case is therefore not particularly relevant.

is quasi-criminal in nature or where there is a particularized need for deterrence to restrain improper law enforcement activities. This result shall ensue whether the proceeding in question is labelled "civil" or "criminal." Both conditions apply in this case, and we therefore hold that the exclusionary rule applies to proceedings under the Utah Illegal Drug Stamp Tax Act. We reverse the judgment of the Commission and vacate the tax and penalty assessed against Sims.

ZIMMERMAN, J., concurs.

STEWART, Justice (concurring in the result):

I concur in the result reached in Justice Durham's opinion. I write separately because I think it essential to observe that her sweeping opinion represents the views of only two justices of this Court and is therefore not the law of the state. I also write because her opinion raises more difficult issues than it settles with respect to the legality of roadblocks. While I would prefer not to address the legality of the roadblock, I do so briefly to point out that the result of this case is dictated by federal law.

As Justice Durham's opinion demonstrates, the Tax Commission proceeding that adjudicated petitioner's tax liability under the Utah Illegal Drug Stamp Tax Act was quasi-criminal in nature. The primary purpose of that Act is to penalize, not to raise revenue. In effect, the Act imposes criminal penalties for the possession of illegal drugs.

The United States Supreme Court held in *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), that the Search and Seizure Clause of the Fourth Amendment to the United States Constitution and the exclu-

sionary rule apply to quasi-criminal proceedings. Because the instant case involves a quasi-criminal proceeding and because the Tax Commission concedes on appeal that the roadblock was illegal, it follows that the evidence seized as a result of the roadblock must be suppressed under federal law. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *see also Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *James v. Louisiana*, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965) (per curiam).[1]

Notwithstanding the Tax Commission's concession that the roadblock was illegal, Justice Durham asserts that it would be "irresponsible" to assume the illegality of the roadblock. She does not explain, and I do not see, why that is so. Issues are frequently conceded for purposes of decision. It is therefore sufficient to hold that federal law requires suppression of the illegally seized evidence in this case. Nevertheless, Justice Durham undertakes an extensive analysis of search and seizure law for the benefit of "the lower courts, counsel, and law enforcement officers generally." She concludes that the roadblock was illegal under Utah constitutional law. That conclusion, however, is dictum.

I would hold the roadblock illegal under federal law because of the complete lack of protection against unbridled police discretion as to how, when, under what circumstances, in what manner, and for what purpose roadblocks may be used. *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). The authority to establish roadblocks to stop automobiles pursuant to wholly arbitrary discretion is fundamentally contrary to the privacy interests protected by the Fourth Amendment to the United States Constitution.

---

1. Justice Howe contends in his dissenting opinion that under *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the proceeding before the Tax Commission was not quasi-criminal in nature. I disagree. The holding in *Janis* turned on the issue of whether evidence illegally seized by state officers should be suppressed in a *federal* action to assess wagering taxes. The Court held that the Fourth

Amendment did not require the suppression of illegally seized evidence in a federal proceeding where the evidence had been seized by state, not federal, law enforcement officers. The Court reasoned that the exclusion of that evidence in a federal proceeding would not serve to deter unlawful state police conduct. *Id.* at 454, 96 S.Ct. at 3032.

**16**

Justice Durham's reliance on, and reference to, *State v. Larocco,* 794 P.2d 460 (Utah 1990), raises difficult problems and settles nothing. Although *Larocco* is cited repeatedly, it did not represent the views of a majority of this Court. Moreover, I do not now, and did not in *Larocco,* understand what Justice Durham means when she refers to "this court's commitment to the warrant approach under our state constitution." I agree that warrants are a highly important element of search and seizure law, but insofar as the "warrant approach" is intended to be something different from the "federal approach," I do not know what the warrant approach is, and *Larocco* does not elucidate that point. On its facts, *Larocco* was nothing more than a disagreement with federal search and seizure law on a comparatively peripheral aspect.

Now, Justice Durham states that "warrantless searches of automobiles will be allowed only if probable cause and exigent circumstances exist." She then states that in the case of a "suspicionless investigatory roadblock, neither the first nor the second prong of the warrant requirement is met." Those statements taken together would make all preplanned, suspicionless roadblocks illegal, including roadblocks intended to remove intoxicated drivers from the highways or to enforce automobile safety measures. Although at one point Justice Durham seems to arbitrarily exempt statutorily authorized roadblocks from those constitutional requirements, she does not explain that point.

I also disavow any conclusion that might be drawn from Justice Durham's opinion that the exclusionary rule should be applied in civil cases generally, as opposed to quasi-criminal cases that are technically civil in nature.

HOWE, Associate Chief Justice (dissenting):

I find it unnecessary to determine whether the roadblock and Sims' subsequent consent to the search were invalid. Assuming that to be true, I cannot agree that evidence seized from Sims' automobile in violation of article I, section 14 of the Utah Constitution is inadmissible in a proceeding before the Tax Commission under the Utah Illegal Drug Stamp Tax Act. The majority extends the state exclusionary rule to proceedings under the Illegal Drug Stamp Tax Act, based on the reasoning that illegally obtained evidence should be excluded from a civil proceeding (1) if the proceeding is in effect criminal or (2) if the exclusion is necessary to deter future unconstitutional searches. In my opinion, neither of those two reasons supports the exclusion of the evidence in the instant case.

The state exclusionary rule came into existence on the vote of a majority of this court in *State v. Larocco,* 794 P.2d 460 (Utah 1990) (Justice Durham wrote for the court, Justice Zimmerman concurred, and Justice Stewart concurred in the result). Chief Justice Hall and this writer dissented from the application of the rule to the facts of that case. Subsequently, in *State v. Thompson,* 810 P.2d 415 (Utah 1991), this court applied the rule to exclude bank records of a criminal defendant. (Justice Stewart dissented.) As the majority opinion in the instant case points out, the *Larocco* decision expressly reserved the question of the nature and scope of the exclusionary rule under the Utah Constitution, holding only that it exists. When and under what conditions it is to be applied was left to be determined in future cases. In view of that reservation, I deem it very important in the instant case that we not extend the rule further than the reasoning and purpose upon which it rests.

The majority opinion correctly notes that in recent years there has been a trend in federal courts to limit the application of the federal exclusionary rule. See *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), for a discussion of the criticism which has been leveled at that rule by writers and jurists. Indeed, Justice Blackmun observed that the evolution of the exclusionary rule has been marked by sharp divisions in the Supreme Court. *Janis,* 428 U.S. at 446, 96 S.Ct. at 3028, 49 L.Ed.2d at 1056. I therefore believe that we should exercise caution in extending the

exclusionary rule to civil cases, particularly where it will have no deterrent effect.

The majority opinion observes that only a few state courts have explicitly considered the question of whether their state exclusionary rule extends to civil proceedings. Of those few courts, most have not applied it to civil proceedings. The majority suggests that only in Oregon, where the purpose of the state exclusionary rule has been characterized as the restoration of a defendant's personal right rather than the deterrence of unlawful police conduct, and Alaska, where a state policy of "fundamental fairness" was recognized, has the rule been invoked in civil proceedings. There is no counterpart right or policy in Utah.

### I

I cannot agree with the majority that civil proceedings under the Utah Illegal Drug Stamp Tax Act are in effect criminal and thus the exclusionary rule should apply. The majority relies upon *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), where the Supreme Court applied the rule in a proceeding for forfeiture of an article used in violation of the criminal law. The Court held that the forfeiture proceeding was quasi-criminal in character. However, the instant case is not a forfeiture proceeding, but a civil tax liability proceeding before the Tax Commission. A subsequent case, *United States v. Janis*, 428 U.S. 433, 447, 96 S.Ct. 3021, 3028–29, 49 L.Ed.2d 1046, 1056–57 (1976) (not cited in the majority opinion), severely limited *One 1958 Plymouth Sedan* to its facts. The Court held that evidence unlawfully seized by *local* police officers investigating local wagering offenses was not barred from use in a subsequent *federal* civil tax proceeding. The Court left open the issue of whether the exclusionary rule should be applied in a civil proceeding involving an intrasovereign violation, i.e., where the agency that effected the unlawful arrest was responsible for instituting the subsequent civil action. Later, in *Immigration and Naturalization Serv. v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82

L.Ed.2d 778 (1984) (discussed *infra* in part II), the Court refused to apply the exclusionary rule even though there had been an intrasovereign violation. It is significant that in *Janis*, the Court could have decided the case on the ground that the civil tax proceeding brought there to collect taxes on illegal wagering was quasi-criminal in nature. But it did not do so. Instead, the *Janis* Court acknowledged *One 1958 Plymouth Sedan* in a footnote but distinguished it on the ground that the forfeiture of items used in the commission of a crime is "clearly a penalty for the criminal offense." *Janis*, 428 U.S. at 447 n. 17, 96 S.Ct. at 3029 n. 17, 49 L.Ed.2d at 1057 n. 17. The Court noted that it had "never applied the exclusionary rule to exclude evidence from a civil proceeding, federal or state." *Janis*, 428 U.S. at 447, 96 S.Ct. at 3029, 49 L.Ed.2d at 1057. To this day, the Supreme Court has not held that a tax collection proceeding was quasi-criminal in nature and applied the exclusionary rule under *One 1958 Plymouth Sedan.*

Forfeiture proceedings are therefore unique in their status as quasi-criminal, and such status should not be extended to civil tax proceedings. Governments levy taxes on a variety of legal activities as well as illegal activities. The nature of the proceeding to impose taxes does not change when the activity taxed is illegal. Indeed, the Internal Revenue Code imposes taxes on bootlegging, gambling, extortion, and fraud. The majority attempts to draw strength for its position by referring to the 100 percent penalty imposed upon violators of the Illegal Drug Tax Stamp Act. However, although heavy penalties are customarily found in federal and state tax law, no court has held or suggested that the imposition of heavy penalties transforms a tax collection proceeding into a quasi-criminal proceeding. The taxpayer may feel that he or she is being punished, but the exclusionary rule should not be used to remedy unjust taxation. The legislature, in enacting the Illegal Drug Stamp Tax Act, clearly intended for the 100 percent penalty to be a civil penalty. It is assessed and collected as part of the tax. The Act does, however, impose a criminal penalty in addition. A

dealer distributing or possessing drugs without affixing the appropriate stamps is guilty of a third degree felony and is subject to a fine of not more than $10,000. Thus, the legislature prescribed separate civil and criminal penalties, which distinction we should observe.

The majority opinion concedes that forfeiture proceedings are frequently cited as the prototype of quasi-criminal proceedings but states that "other kinds of civil proceedings" have been characterized as quasi-criminal. However, none of the cases cited and relied upon by the majority as being quasi-criminal are civil tax proceedings except *United States v. Blank*, 261 F.Supp. 180 (N.D.Ohio 1966). *Blank* was decided years before *Janis* clearly limited *One 1958 Plymouth Sedan* to forfeiture proceedings. Thus, it is clear that *Blank* is not good law in light of the subsequent case of *Janis*. The Second Circuit, in *Tirado v. Commissioner*, 689 F.2d 307 (2d Cir. 1982), noted that "in a handful of cases" decided just after the Supreme Court's application of the exclusionary rule to forfeiture proceedings in *One 1958 Plymouth Sedan,* a few courts applied the exclusionary rule in civil proceedings by analogy to criminal proceedings. *Tirado,* 689 F.2d at 311 n. 5. "These cases stretched the 'quasi-criminal' rationale used in the forfeiture cases to reach" certain civil proceedings, wrote the Second Circuit. *Id.* Among the cases referred to are *Blank* and *Powell v. Zuckert,* 366 F.2d 634 (D.C.Cir.1966). Those two cases and *Iowa v. Union Asphalt and Road Oils, Inc.,* 281 F.Supp. 391 (S.D.Iowa 1968), which are all relied upon in the majority opinion, were decided after *One 1958 Plymouth Sedan* but before its application was severely limited by *Janis.* Thus, their value as precedent is questionable.

The reasoning of the majority is that this tax proceeding is quasi-criminal and that Sims should be accorded the benefit of the exclusionary rule, which was developed to be applied in criminal cases. Perhaps, then, other rights accorded a criminal defendant should be extended to Sims as well. The Tax Commission would then be transformed into a criminal tribunal under which Sims ought to have the right to a jury trial, the right to counsel, and other protections afforded to an accused. Such a conclusion would be impractical and absurd.

## II

The second reason offered in the majority opinion for applying the exclusionary rule in this case, i.e., to deter future unlawful seizures, is misplaced. The exclusionary rule is a creature of federal case law. In that body of law, it has been consistently held that the exclusionary rule is "a judicially created remedy designed to safeguard fourth amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046, 1056 (1976) (quoting *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)). Since it is a remedy and not a right, "application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* 428 U.S. at 447, 96 S.Ct. at 3028, 49 L.Ed.2d at 1056-57 (quoting *Calandra,* 414 U.S. at 348, 94 S.Ct. at 620). The exclusionary rule is strong medicine which prevents the enforcement of admittedly valid laws and should be taken no more often than is necessary to "combat the disease." *Stone v. Powell,* 428 U.S. 465, 487 n. 24, 96 S.Ct. 3037, 3049 n. 24, 49 L.Ed.2d 1067 n. 24, 1083-84 n. 24 (1976) (quoting Amsterdam, *Search, Seizure, and section 2255: A Comment,* 112 U.Pa.L.Rev. 378, 388-89 (1964)); *see also Janis,* 428 U.S. at 447, 454, 96 S.Ct. at 3028-29, 3032, 49 L.Ed.2d at 1056-57, 1060-61. The prime, if not the sole, purpose of the exclusionary rule is to "deter future unlawful police conduct." *Janis,* 428 U.S. at 446, 96 S.Ct. at 3028, 49 L.Ed.2d at 1056 (quoting *Calandra,* 414 U.S. at 347, 94 S.Ct. at 619). Indeed, one reason the exclusionary rule is generally not applicable in civil cases is that the parties to the action did not control the search and application of the rule would not discourage the parties from searching unlawfully.

The Supreme Court in *Janis* outlined a framework for deciding the type of proceeding in which application of the exclusionary rule is appropriate. 428 U.S. at 448–54, 96 S.Ct. at 3029–32, 49 L.Ed.2d at 1057–61. The Court stated that the likely social benefits of excluding unlawfully seized evidence should be weighed against the likely costs. On the benefit side of the balance, the prime purpose of the rule is to deter future unlawful police conduct. On the cost side, there is the loss of often probative evidence, which may result in a wrongdoer's going unpunished. Subsequently, in *Immigration and Naturalization Service v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), the Court summarized why it had refused to apply the exclusionary rule in *Janis*, which was a civil proceeding to impose and collect taxes on illegal bookmaking:

> Two factors in *Janis* suggested that the deterrence value of the exclusionary rule in the context of that case was slight. First, the state law enforcement officials were already "punished" by the exclusion of the evidence in the state criminal trial as a result of the same conduct. Second, the evidence was also excludable in any federal criminal trial that might be held. Both factors suggested that further application of the exclusionary rule in the federal civil proceeding would contribute little more to the deterrence of unlawful conduct by state officials. On the cost side of the balance, *Janis* focused simply on the loss of "concededly relevant and reliable evidence." The Court concluded that, on balance, this cost outweighed the likely social benefits achievable through application of the exclusionary rule in the federal civil proceeding.

*Id.* 468 U.S. at 1042, 104 S.Ct. at 3485, 82 L.Ed.2d at 788 (quoting *Janis*, 428 U.S. 433, 447–48, 96 S.Ct. at 3029).

In refusing to apply the exclusionary rule in the tax proceedings in *Janis*, the Court properly noted:

> There comes a point at which courts, consistent with their duty to administer the law, cannot continue to create barriers to law enforcement in the pursuit of

a supervisory role that is properly the duty of the Executive and Legislative branches.

*Janis*, 428 U.S. at 459, 96 S.Ct. at 3034, 49 L.Ed.2d at 1064.

In *Lopez–Mendoza*, the Court declined to apply the exclusionary rule in a civil deportation hearing where an alien admitted his unlawful presence in this country after an allegedly unlawful arrest by INS agents, making it an intrasovereign violation. Nevertheless, the Court held that "the *Janis* balance between costs and benefits comes out against applying the exclusionary rule in civil deportation hearings held by the INS." *Lopez–Mendoza*, 468 U.S. at 1050, 104 S.Ct. at 3489, 82 L.Ed.2d at 793. It was observed that the INS had "already taken sensible and reasonable steps to deter Fourth Amendment violations by its officers," making the likely additional deterrent value of the exclusionary rule small. *Id.* "The costs of applying the exclusionary rule in the context of civil deportation hearings are high," the Court noted, because the courts would be compelled to release from custody persons who would then immediately resume their commission of a crime through their continuing unlawful presence in this country. *Id.*

In a case decided after *Janis*, the Second Circuit held in *Tirado v. Commissioner*, 689 F.2d 307 (2d Cir.1982), that evidence allegedly seized unlawfully by federal narcotics agents for use in a narcotics prosecution was not barred by the exclusionary rule in a subsequent federal civil tax proceeding by the IRS. The court concluded that the deterrent value of the exclusionary rule would not be served by applying the rule to exclude evidence from a proceeding where the evidence was not seized with the participation or collusion of, or in contemplation of use by, the IRS agents responsible for the proceeding in which the evidence is presented. *Id.* at 315. The court noted that the exclusionary rule "is calculated to prevent, not to repair," and that it should not be applied in cases where there is only a remote prospect of deterrence. *Id.* at 310 (citing *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4

L.Ed.2d 1669 (1960)). "Since use of the exclusionary rule impairs the search for truth even as it aids observance of constitutional limitations, standards for use of the rule must balance public needs against the claims of individual liberty." *Id.* at 310. In refusing to apply the exclusionary rule in the tax deficiency proceedings brought against the defendant by the IRS, the court stated that the deterrent purpose of the rule would not be served by suppressing the seized evidence that formed the basis of the tax deficiency notice. Said the court:

> Tax deficiency proceedings are too remote from the "zone of primary interest" of the narcotics agents who made the seizures in Tirado's apartment. As in *Janis*, it is not reasonable to suppose that a rule barring use of the evidence in a civil tax proceeding would have materially influenced those agents in their decision whether to make the particular seizures.... Nor would agents of the Drug Enforcement Agency be likely to harbor a general motivating interest in assisting the enforcement of civil tax obligations.

*Id.* at 314.

As is pointed out in footnote 1 in the majority opinion, Sims was charged with the crime of possession of a controlled substance with intent to distribute for value. The trial court convicted him, but the court of appeals overturned that conviction after determining that evidence of the drugs seized from his automobile should have been suppressed. *State v. Sims*, 808 P.2d 141 (Utah Ct.App.1991). Thus, a healthy dose of deterrent has already been administered to the officers participating in the roadblock. To administer a further dose to the Tax Commission is quite unfounded. The Tax Commission is charged by the Utah Constitution with administering the tax laws of this state. Neither the Commission nor any of its officers or employees originated or participated in any way in the roadblock. Application of the exclusionary rule in this case will not serve any deter-

rent purpose since the Commission, its officers, and its employees are blameless in any violation there may have been of Sims' constitutional rights. Like the officers who illegally seized evidence in *Janis*, in *Lopez–Mendoza*, and in *Tirado*, the officers here, who were members of the Juab County Sheriff's force and members of the Utah Highway Patrol, did not have in mind aiding or assisting the Tax Commission in collecting taxes when they set up the roadblock which resulted in Sims' apprehension. That thought was not in their "zone of primary interests." Unless the exclusionary rule under our state constitution is to be applied blindly in every case where there is a violation, it has no place in the instant case, where no deterrent effect will be felt.

Recently the Supreme Court of Iowa, in *Westendorf v. Iowa Department of Transportation*, 400 N.W.2d 553 (Iowa 1987), refused to impose the exclusionary rule in a driver's license revocation proceeding because it "would have little force as a deterrent of unlawful police action because the [driver's license] department does not control the actions of local police officers." *Id.* at 557. That court, relying upon the Supreme Court's decisions in *Janis* and in *Lopez–Mendoza*, applied a balancing test.[1] Similarly, the Supreme Court of New Jersey, in *Delguidice v. New Jersey Racing Commission*, 100 N.J. 79, 494 A.2d 1007 (1985), held that a finding of entrapment and the resulting dismissal of criminal proceedings against a jockey did not prevent use of the incriminating evidence in the jockey's licensing hearing before the racing commission. The balancing test of *Janis* and *Lopez–Mendoza* was employed. Because the illegally obtained evidence had been suppressed in the criminal proceedings, the desired deterrent had already been realized, and extending the exclusionary sanction to the subsequent licensing proceeding would have no deterrent effect.

There are significant parallels in the Iowa case, the New Jersey case, and the

---

1. Subsequently, the Iowa legislature enacted a statute that extended the exclusionary rule to driver's license revocation proceedings. *See*

*Brownsberger v. Department of Transp., Motor Vehicle Div.*, 460 N.W.2d 449 (Iowa 1990).

instant case. First, in all three cases, the subsequent civil proceedings arose out of the same incidents as the criminal proceedings. In the criminal proceedings, the evidence was suppressed. Second, in the subsequent civil proceedings, the defendants were faced with heavy consequences. Sims faces a substantial tax and penalty. In the Iowa case, the defendant faced the loss of his driver's license, which usually is a more severe consequence than a short jail term or a fine imposed for driving under the influence. In the New Jersey case, the jockey faced the loss of his license that enabled him to earn his living. In all three cases, the tax commission, the driver's license department, and the racing commission, respectively, did not direct, authorize, or in any way control the officers' actions. Consequently, application of the exclusionary rule in the civil proceeding would serve no purpose.

The majority opinion does not conduct any kind of a balancing test to determine whether application of the exclusionary rule is appropriate in this case. No mention is even made of the high cost of invoking the rule, *viz.*, Sims escapes criminal conviction and all tax and penalties. Indeed, the only justification offered is that law enforcement entities have a "financial motivation" for conducting illegal searches since Utah law provides that resulting revenue will be shared with the agency conducting the search. Utah Code Ann. § 59–19–105(6). However, the majority concedes that this provision did not become effective until nine months after the search of Sims' automobile. Therefore, it is clear that in the instant case, no part of the tax or penalty imposed on Sims will find its way back to Juab County, where the roadblock occurred. The officers here did not act under any financial incentive.

In summary, the majority, in applying article I, section 14 of the Utah Constitution, goes further than any case of the United States Supreme Court in enforcing Fourth Amendment rights. The majority pushes the exclusionary rule into the area of civil tax law, where few courts, if any, federal or state, have ever trod. The majority applies the exclusionary rule as if it were a constitutional right and completely overlooks the deterrent effect of the exclusionary rule in the overturning of Sims' criminal conviction. Applying the rule against the Tax Commission will serve no deterrent purpose.

I would affirm the decision of the Commission.

HALL, C.J., concurs in the dissenting opinion of HOWE, Associate C.J.

