UNITED STATES of America, Appellee,

v.

Ismael France CORRAL, Appellant.

UNITED STATES of America, Appellee,

v.

Jose Ramon
MARTINEZ–FABELA, Appellant.

Nos. 86–2361, 86–2362.

United States Court of Appeals,
Tenth Circuit.

July 13, 1987.

Robert Ramos, El Paso, Tex., for appellant Corral.

Reber Boult, Albuquerque, N.M. (Timothy M. Padilla, Albuquerque, N.M., with him on brief), for appellant Martinez-Fabela.

James D. Tierney, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., and Larry Gomez, Asst. U.S. Atty., Albuquerque, N.M., with him on brief), for appellee.

Before HOLLOWAY, Chief Judge, and ANDERSON and TIMBERS,* Circuit Judges.

* Of the Second Circuit, by designation.

TIMBERS, Circuit Judge.

Jose R. Martinez-Fabela ("Martinez") and Ismael F. Corral ("Corral") appeal from judgments of conviction entered September 2, 1986 in the District of New Mexico, Juan G. Burciaga, *District Judge*, following a jury trial. Martinez and Corral were found guilty of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2 (1982).

Prior to trial, Martinez and Corral made a motion to suppress evidence seized during a consensual search of the rented truck they were driving. They mounted a multiprong attack, challenging, first, the constitutionality of the roadblock at which they were stopped by the New Mexico State Police; second, the propriety of their detention after the initial stop; and, third, the validity of the consents they both gave to search the truck and their personal effects. After a hearing, the district court denied the motions to suppress. On appeal, Martinez and Corral argue that the denial of their motions was clearly erroneous. We disagree.

We hold that the roadblock in the instant case comported with established law in this Circuit. The roadblock was put in place to check vehicle registrations, driver's licenses and proof of insurance—all legitimate and permissible reasons. We also hold that the detention of Martinez and Corral, following the initial stop at the roadblock, was reasonable within the meaning of *Terry v. Ohio*, 392 U.S. 1 (1968). Finally, we hold that appellants' consents to accompany the officers from the roadblock to the local police department, and to the subsequent searches, were voluntary and not the product of police overreaching, coercion or duress.

Martinez also contends that the procedures employed in sentencing him were flawed by consideration of false and unreliable information contained in the pre-sentence report prepared on him.[1] We dis-

agree. The court below determined on the record that it placed no reliance on the challenged portions of one report in imposing sentence. We accept this determination. We do remand this matter, however, with directions that the trial court cause its determination that it would not consider the challenged statements in imposing sentence to be appended, by written order to the pre-sentence report for the information of any persons examining the pre-sentence report. *See* Fed.R.Crim.P. 32(c)(3)(D).

We affirm the judgments of conviction in all respects. As to appellant Martinez' challenge to his sentencing procedure, we remand for the limited purpose delineated herein.

I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

On April 17, 1986 Martinez was driving, with Corral his passenger, a rented Ryder truck eastbound on New Mexico State Road 62/180 when they were stopped at a roadblock set up by the New Mexico State Police near Hobbs, New Mexico. The roadblock had been established by State Police Officers Denton and Frisk, pursuant to their supervisor's permission, to conduct routine driver's license and car registration checks. The plan implemented by the officers with the roadblock was to stop all eastbound traffic, with the exception of a local supermarket's delivery trucks. The latter trucks were excluded from the roadblock because the officers, who had often stopped such trucks at previous roadblocks, knew all the drivers and knew that their logbooks, cab cards and insurance were current.

After the Ryder truck stopped, Officer Denton approached it. As Martinez rolled down the window, the officer detected a strong odor of marijuana emanating from the truck. The officer requested that Martinez produce his driver's license and the

---

1. Martinez also contends that the court erred in denying his pre-trial discovery motions; and that the voir dire by the court in selecting the jury was insufficient to insure a fair trial. Corral argues that the evidence was insufficient to sustain his conviction. We have carefully considered these claims of error and we hold that they are without merit.

truck rental agreement. Martinez complied. In addition, he offered the officer an expired National Guard identification card. Martinez explained to the officer that he and Corral were on their way to Atlanta to deliver to Martinez' sister the furniture in the truck. Martinez stated that the trip was to be a hurried one because he was stationed in El Paso and had to return to that locale. Denton found this statement to be inconsistent with his expired National Guard identification card.

In view of his detection of the odor of marijuana, Denton asked Martinez to pull the truck over to the side of the road. Martinez and Corral thereupon got out of the truck. At that time Officer Frisk joined them. After being informed by Denton why he had asked Martinez to pull the truck over to the side of the road, Frisk asked Martinez for permission to look in the cargo compartment of the truck. Martinez responded in the affirmative. Frisk began a limited search. He noticed that the truck was loaded with furniture and cardboard U–Haul boxes which were taped shut. There also were several mattresses stacked on top of the cardboard boxes.

While the conversation between Frisk and Martinez was taking place, Denton walked around the truck to the passenger side. He asked Corral who had been smoking the marijuana. Corral admitted that he had been smoking it, but insisted that he already had smoked the only joint in his possession. Denton asked Corral directly if he had in his possession any more marijuana, to which Corral responded in the negative. Denton informed Corral that, since he had admitted smoking an illegal substance, Denton would "have to look inside of everything." Denton next asked Corral if he had ever "been in trouble" before. Corral responded that he once had been charged with a firearms violation in Chicago. Denton then decided, for his own safety, to frisk Corral. A pat down of Corral resulted in the discovery of $429 in currency. Corral then gave Denton his full name and birthdate. Denton gave this information to Frisk who went to his police car to radio in a request that a check on

Corral be made through the National Crime Information Center ("NCIC").

Denton then asked Corral for permission to look further inside the truck and to look inside his suitcase. Corral gave his permission to do so. The search of the suitcase disclosed $1,000 in $20 bills.

Denton next opened the sliding door between the truck cab and the cargo compartment. He saw the furniture and the mattresses stacked on the sealed cardboard boxes. The officers then consulted with each other. In view of the amount of currency found in Corral's suitcase and on his person, together with what the officers believed was a curiously improper way to pack the cargo compartment, they decided to seek permission to search the truck more thoroughly. According to Denton's trial testimony, he spoke with appellants as follows:

> "I gave—it was extremely windy on that day. I just told him [Martinez] that we could unload the van at that time right there on the road, or if—they were headed east anyway, they were going right through Hobbs. At that time, I told them that if they would rather, we could just go into Hobbs and call the Hobbs Police Department, who has a drugs detecting dog, that's trained to detect drugs, if they wanted to, it would be alot easier if we just went in there and let the dog sniff the truck out and they could be on their way.... The option I gave him [Martinez], we could unload it there where the wind was blowing and it would have been—to me, it would have been disastrous. You know, it could have destroyed some of the property that was there."

Appellants agreed to accompany the officers to Hobbs. Following Denton, they drove into the town. Upon arrival at the Hobbs Police Department, the officers instructed Martinez to pull the truck into a fenced-in area behind the police station, out of the wind. There they were met by several officers of the Hobbs Police Department and "Buster", the dog trained in drug detection. Denton then requested Martinez to sign a written consent-to-search

form, to augment his earlier oral consent. Following a discussion of the form, Martinez read it twice and signed it.

Once the written form had been signed, Denton instructed Officer Randolph of the Hobbs Police Department to let "Buster" into the truck. According to the trial testimony, each time the dog entered the truck he attempted to get underneath the couch and mattresses to the cardboard boxes. The officers opened the boxes and discovered approximately 474 pounds of cocaine. Martinez and Corral were arrested immediately.

On April 14, 1986 a federal grand jury returned a one count indictment charging appellants with one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2 (1982). On June 27, 1986 an evidentiary hearing was held on defense motions to suppress. Following the hearing, the motions were denied.

The case was tried before a jury on July 15 and 16, 1986. Appellants were found guilty as charged in the indictment. On August 29, 1986 Corral was sentenced to a ten year prison term and Martinez was sentenced to a fifteen year prison term. This appeal followed. We consolidated the appeals for purposes of oral argument and this opinion.

For the reasons set forth below, we affirm the convictions in all respects, with the exception of the limited remand for the purpose of appending a written order of determination to appellant Martinez' presentence investigation report.

## II.

### A. *Constitutionality*

■ Appellants argue that the roadblock set up by the New Mexico State Police was unconstitutional under prevailing Fourth Amendment standards. They assert that the roadblock was not established for the stated purpose of checking driver's licenses, vehicle registrations and proof of insurance; rather, they claim that the roadblock was a pretext for stopping them. A thorough review of the record leaves us with the firm conviction that that argument, cloaked in cursory allegations, is without merit.

We have upheld many times the constitutionality of roadblocks currently in use by the New Mexico State Police. *E.g., United States v. Lopez,* 777 F.2d 543 (10th Cir. 1985); *United States v. Obregon,* 748 F.2d 1371 (10th Cir.1984); *United States v. Prichard,* 645 F.2d 854 (10th Cir.), *cert. denied,* 454 U.S. 832 (1981). We uphold the constitutionality of the roadblock involved here.

The purpose of the roadblock set up by Officers Denton and Frisk was to check driver's licenses, vehicle registrations and proof of insurance. This was a permissible and lawful purpose. The roadblock was set up with the knowledge and consent of the officers' supervisor. It did not involve a single, random or selective stop chosen at the officers' discretion. *Cf. Delaware v. Prouse,* 440 U.S. 648 (1979). Rather, the roadblock as implemented consisted of the stopping of every vehicle heading east on State Road 62/180 with the exception of the local supermarket delivery trucks which were permitted to pass uninspected for articulated and legitimate reasons. Hence, this roadblock was established in a systematic manner to stop vehicles in a pattern which protected the public from the officers' unbridled discretion.

We hold that the roadblock passed constitutional muster.

### B. *Propriety of the Detention and Searches*

We turn next to appellants' contention that their detention was an unreasonable seizure and that the consents given by them with respect to the subsequent searches were tainted. Our analysis is bifurcated into two segments: first, the initial detention; and, second, the search at the Hobbs Police Station.

#### 1. *The Initial Detention*

■ The Supreme Court has enunciated a two-prong inquiry for evaluating the reasonableness of police-citizen encounters which, although somewhat intrusive, fall

short of full scale arrest. In *Terry v. Ohio,* 392 U.S. 1 (1968), the Court set forth the standard which a reviewing court must apply when examining police action. We must inquire

"whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."

*Terry, supra,* 392 U.S. at 23. In the instant case, having made this inquiry, we answer it in the affirmative and hold that appellants were detained lawfully after being initially stopped at the roadblock. *Accord, United States v. Obregon,* 748 F.2d 1371 (10th Cir.1984).

Officers Denton and Frisk had reasonable and articulable suspicion that the individuals might be involved in violation of the narcotics laws when Officer Denton recognized the odor of marijuana emanating from the vehicle after Martinez rolled down the window. This suspicion was confirmed when Corral admitted that he had smoked marijuana. Further, when Corral informed Denton that he had been charged at an earlier date with a firearms violation, the officers were amply justified in running the NCIC check to determine if Corral was a fugitive. "Consequently, in order to run an NCIC check while minimizing the danger to the defendants and to travelers approaching the roadblock, the officers acted reasonably in requesting [Martinez] to park on the shoulder of the road." *United States v. Lopez,* 777 F.2d 543, 548 (10th Cir.1985).

We hold that the subsequent detention of appellants comported with the reasonableness requirement of *Terry.*

### 2. *The Search*

■ Appellants contend that the district court erred in finding that they validly consented to accompany Officers Frisk and Denton to the Hobbs Police Department. The standard of review of such a claim was set forth in *United States v. Lopez, supra,* 777 F.2d at 548: "In reviewing a denial of a motion to suppress, the trial court's finding of fact must be accepted by this court

unless clearly erroneous, *United States v. Cooper,* 733 F.2d 1360, 1364 (10th Cir. 1984), with the evidence viewed in the light most favorable to the district court's finding. *United States v. Obregon,* 748 F.2d 1371, 1376 (10th Cir.1984)." We conclude the district court's finding that appellants voluntarily consented to accompany the officers and to the subsequent searches was not clearly erroneous.

It is axiomatic that a consent to search is valid if voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 223–226 (1973). Further, consent to search is voluntary if it is not the product of duress or coercion. *Id.* at 227. The record before us is barren of any such negative behavior on the part of the officers involved. In response to the initial request by Officer Frisk, Martinez agreed to the search at the roadside. Corral responded to a similar request by Officer Denton by assuring him that he could "go ahead—no problem". Both Martinez and Corral stood by observing the search. Neither made any requests of the officers to stop. After cursory examination, the officers decided that a more thorough examination of the truck was called for. They gave Martinez and Corral the option of having the truck searched at the roadside or at the Hobbs Police Department, where the truck would be searched by a drug-detecting dog. The option was a sensible one. The testimony was that the weather on the highway that day was inclement. The task of unloading all of the furniture on the side of the road would have been unwieldy at best. At worst, it would have created a situation highly dangerous to the four individuals in particular and the driving population in general. After consideration, Martinez and Corral decided to accompany the officers to Hobbs. They knew the reason for the additional search and that the officers would be aided by a drug-detecting dog. We decline to relieve appellants of their voluntary choice at this late date.

Appellants argue that our holdings in *United States v. Gonzalez,* 763 F.2d 1127 (10th Cir.1985), and *United States v. Recalde,* 761 F.2d 1448 (10th Cir.1985), re-

quire reversal of their convictions. We disagree. In those cases, which are limited to their facts, we held that probable cause to remove the defendants from the highway to a local police department was non-existent. As a result, the consents to do so were held to have been rendered involuntary and beyond the scope of a permissible *Terry* stop. In the instant case, however, it is beyond cavil that Officers Frisk and Denton had probable cause to search the truck. The odor of marijuana struck Officer Denton as soon as Martinez opened the window. Corral confirmed the use of the illegal substance by admitting that he had smoked it. Added to this was the unusual manner in which the truck was packed, in conjunction with the large amount of currency found in Corral's suitcase. Evaluating these circumstances as they appeared to these prudent, cautious and trained police officers, *United States v. McCormick*, 468 F.2d 68, 73 (10th Cir.1972), *cert. denied*, 410 U.S. 927 (1973), we are satisfied that they were circumstances which would cause the officers reasonably to believe that a crime was being committed.

We hold that the district court was not clearly erroneous in denying the motions to suppress.

### III.

■ Martinez argues that the district court committed reversible error in considering certain challenged allegations in his pre-sentence report when it imposed sentence on him. Based on this he invites us to remand the case for, inter alia, a new sentencing. We decline the invitation.

Fed.R.Crim.P. 32(c)(3)(D) requires that if a defendant alleges any factual inaccuracy in the pre-sentence investigation report the court could "make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." In the instant case, Martinez challenged certain allegations contained in the pre-sentence report that he possessed substantial amounts of cocaine and large amounts of money found at an apartment allegedly rented by him under an alias. In response to this challenge the court below stated on the record that it was not considering those allegations in imposing sentence. We accept the trial court's determination.

We note, however, that total compliance with Rule 32(c)(3)(D) was not achieved with this oral pronouncement. The rule contains an additional requirement. It is mandatory when it states that the court *shall* cause a written record of its determination to be appended to and accompany any copy of the pre-sentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission. It is beyond cavil that these administrative agencies make substantial use of the pre-sentence investigation report. Justice requires that any challenges to the accuracy of that report, and the judicial resolution as to the controverted matters, be brought to the attention of these agencies when they utilize the report.

We therefore remand with directions that the trial court cause its determination that it did not consider the challenged allegations in imposing sentence to be appended, in a written order, to the pre-sentence investigation report.

### IV.

To summarize:

After considering in detail each of appellants' claims of error, we conclude that the judgments of conviction must be affirmed. We hold that the roadblock, as implemented by Officers Frisk and Denton, fully comported with Fourth Amendment standards. We also hold that the detention of appellants after the initial roadblock stop was acceptable under the rationale of *Terry*. We further hold that the evidence is plainly adequate to support the district court's finding that Martinez and Corral voluntarily consented to accompany the officers to the Hobbs Police Department and to the subsequent searches. As to appellant Martinez' pre-sentence investigation report, we remand with directions that the trial court append a written order of its determination to the report.

AFFIRMED in part; REMANDED in part.