**STATE of Utah, Plaintiff and Petitioner,**

v.

**Dennis SHOULDERBLADE, Defendant and Respondent.**

No. 930518.

Supreme Court of Utah.

Oct. 25, 1995.

---

Jan Graham, Att'y Gen., Marian Decker, Todd A. Utzinger, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

Stephen R. McCaughey, G. Fred Metos, Salt Lake City, for defendant.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

PER CURIAM:

For the second time, we have granted certiorari to review a Utah Court of Appeals decision concerning Dennis Shoulderblade. *State v. Shoulderblade*, 858 P.2d 1049 (Utah Ct.App.1993), *cert. granted*, 870 P.2d 957 (Utah 1994). Previously, we reversed and remanded a court of appeals decision that affirmed Shoulderblade's conviction. We directed the court of appeals to decide whether a voluntary consent to search was sufficiently attenuated from an illegal roadblock so as to preclude the application of the Fourth Amendment exclusionary rule. *State v. Shoulderblade*, No. 920239 (Utah Jan. 5, 1993) (order granting motion for summary disposition). This attenuation analysis evaluates whether the police exploited their prior misconduct to obtain consent to search. If so, the evidence discovered in the search must be excluded. On remand, the court of appeals applied its own attenuation analysis from *State v. Small*, 829 P.2d 129 (Utah Ct.App.), *cert. denied*, 843 P.2d 1042 (Utah 1992), and ruled that because close temporal proximity precluded attenuation, the exclusionary rule applied. *Shoulderblade*, 858 P.2d at 1052–53. Accordingly, it reversed Shoulderblade's conviction and remanded to the trial court. *Id.* at 1053.

The State appeals, arguing that close temporal proximity does not dispositively preclude attenuation and that the roadblock was

merely a technical violation to which the exclusionary rule should not apply. We agree that temporal proximity alone is not dispositive but do not reverse because application of the exclusionary rule is appropriate.

## I. FACTS

The facts are not disputed. On September 29, 1988, the police conducted an illegal roadblock in Millard County, Utah, on a section of Interstate 15. Approximately fifteen officers from the Utah Highway Patrol and the Millard County Sheriff's office were assigned to operate the roadblock. They were instructed to check driver's licenses and vehicle registrations and to look for any criminal activity.

A car driven by Dennis Shoulderblade stopped at the roadblock. Leaning in the car window, an officer requested the car's registration and valid identification from Shoulderblade and his passenger, Lemuel Small. Both produced identification, but the car was not registered to either occupant. Small explained that the car belonged to his friend. The officer radioed dispatch to confirm the vehicle's registration and to check the occupants' driver's licenses. While waiting for confirmation, the officer interrogated Shoulderblade and Small. Their answers that they had been to Las Vegas and were returning to Montana seemed plausible to the officer. He also asked if they had any alcohol, firearms, or drugs in the car, and they both replied in the negative. According to the officer, what Shoulderblade and Small were doing was "entirely lawful." Nevertheless, the officer asked if he could look in the vehicle. Small consented. Both Shoulderblade and Small were arrested after substantial quantities of drugs, drug paraphernalia, firearms, and cash were found.

Shoulderblade and Small were both criminally charged with possession of a controlled substance and possession of a controlled substance with intent to distribute in violation of Utah Code Ann. § 58–37–8(2)(a)(i) and (1)(a)(iv). Prior to their joint trial, both Shoulderblade and Small moved to suppress the evidence obtained in the search. The trial court denied the motions, and the jury found Shoulderblade and Small guilty.

Shoulderblade and Small appealed their decisions separately. In his appeal, Small raised the issue of attenuation. The court of appeals reversed his conviction and held that on remand the evidence seized from the vehicle should be suppressed because "Small's consent to have the vehicle searched was not sufficiently attenuated to dissipate the taint of the illegal roadblock." *Small*, 829 P.2d at 132.

Shoulderblade did not raise the issue of attenuation in his appeal. The court of appeals affirmed Shoulderblade's conviction on the ground that voluntary consent was given for the search. *State v. Shoulderblade*, No. 900288, slip op. at 3–4 (Utah Ct.App. Mar. 12, 1992). With new counsel, Shoulderblade petitioned this court for certiorari, arguing that his original appellate counsel was ineffective for failing to raise the attenuation issue. The State agreed, and we reversed and remanded for the court of appeals to decide the issue of attenuation. *State v. Shoulderblade*, No. 920239 (Utah Jan. 5, 1993) (order granting motion for summary disposition). Two days later, this court issued its opinion in *State v. Thurman*, 846 P.2d 1256 (Utah 1993), setting forth the framework for a correct attenuation analysis.

On remand, the court of appeals ruled that stare decisis applies to a multi-panel appellate court and therefore it was bound to apply its attenuation analysis from *Small*, because Shoulderblade's appeal "is identical in both law and fact to that presented in *Small*." *Shoulderblade*, 858 P.2d at 1052. In so doing, it did not consider the attenuation analysis from *Thurman*.

The State raises two issues. First, under the doctrine of stare decisis did the court of appeals err by applying the attenuation analysis from *Small* instead of that from *Thurman?* Second, does a correct attenuation analysis require reversing the court of appeals and affirming the trial court?

## II. STARE DECISIS

The court of appeals ruled that this court's holding on stare decisis in *Thurman* bound it to apply the attenuation analysis it had applied in *Small*. *Shoulderblade*, 858

P.2d at 1052. Under the doctrine of stare decisis, once a point of law is decided, that ruling should be followed by a court of the same or a lower rank in subsequent cases confronting the same legal issue. 20 Am. Jur.2d *Courts* § 183 (1965). Once the court of last resort makes a legal ruling, decisions on the same issue by courts of a lower rank are superseded. *See Consolidation Coal Co. v. Utah Div. of State Lands & Forestry*, 886 P.2d 514, 524 n. 14 (Utah 1994). Stare decisis forges certainty, stability, and predictability in the law. It also reinforces confidence in judicial integrity and lays a foundation of order upon which individuals and organizations in our society can conduct themselves. *State v. Menzies*, 889 P.2d 393, 398–99 (Utah 1994); *Thurman*, 846 P.2d at 1269; *see also Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991); *Vasquez v. Hillery*, 474 U.S. 254, 265–66, 106 S.Ct. 617, 624–25, 88 L.Ed.2d 598 (1986). Thus, stare decisis results in adherence to a single rule of law throughout a jurisdiction. *See, e.g., Consolidation Coal*, 886 P.2d at 524; *Menzies*, 889 P.2d at 398–99; *Thurman*, 846 P.2d at 1269.

In *Thurman*, this court held that "stare decisis has equal application when one panel of a multi-panel appellate court is faced with a prior decision of a different panel." 846 P.2d at 1269. However, *Thurman* dealt only with the application of the doctrine of stare decisis to rulings by various panels of the court of appeals. It did not consider the impact of rulings by a court of higher rank on lower court rulings. *Id.* No doubt the court of appeals misread our decision in *Thurman* to mean that it should apply its ruling in the companion case of *Small* to the facts of this case. That, however, was not the purpose of our remand.

## III. ATTENUATION OF CONSENT FROM AN ILLEGAL SEIZURE

The purpose of an attenuation analysis is found in the basic truth that the government must use lawful means to achieve its objectives. This includes not seizing a citizen to unearth wrongdoing except under well-defined circumstances. *See State v. Ramirez*, 817 P.2d 774, 785–86 (Utah 1991);

*State v. Arroyo*, 796 P.2d 684, 687–88 (Utah 1990). The incentive for engaging in unconstitutional conduct generally can be removed by excluding evidence obtained from illegal seizures. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961); *Ramirez*, 817 P.2d at 786. Excluding such evidence prevents the courts from becoming a party to wrongdoing and maintains public confidence in the integrity of governmental action. *Arroyo*, 796 P.2d at 689 (citing *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *Terry v. Ohio*, 392 U.S. 1, 13, 88 S.Ct. 1868, 1875–76, 20 L.Ed.2d 889 (1968)). The attenuation analysis evaluates the relationship between official misconduct and subsequently discovered evidence to determine if excluding the evidence will effectively deter future illegalities. *Thurman*, 846 P.2d at 1263–64; *see also Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963).

The attenuation analysis was first required in *Arroyo*. The police illegality in *Arroyo* was a pretextual traffic stop. In question was whether the defendant subsequently consented to a vehicular search that uncovered drugs. This court defined the parameters for resolving the consent issue and remanded for an evidentiary hearing. *Arroyo*, 796 P.2d at 688–92. In so doing, we held that when a consensual search is preceded by a Fourth Amendment violation, the evidence obtained from the search must be excluded unless the state proves that the consent was voluntary and that it was not obtained by exploiting the violation. *Id.* at 688; *see also Sims v. Collection Div. of Utah State Tax Comm'n*, 841 P.2d 6, 9 n. 8 (Utah 1992) (plurality opinion). We rejected the position that voluntary consent, by itself, is an intervening act free of exploitation because the "[p]olice should not be permitted to ratify their own illegal conduct by merely obtaining a consent after the illegality has occurred." *Arroyo*, 796 P.2d at 689. Factors to consider in the attenuation analysis include the temporal proximity of the misconduct to the consent, the purpose and flagrancy of the conduct, and the presence of intervening circumstances. *Arroyo*, 796 P.2d at

690–91 n. 4 (citing *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975)).

In *Thurman*, the court clarified the operation and interaction of these factors. 846 P.2d at 1263–65. There, the police exceeded the scope of a search warrant by ramming down a door and arresting the defendant without permitting him to respond to their knocking. *Id.* at 1258. The purpose of this misconduct was personal safety; the police feared that the defendant had explosives and was dangerous. Five hours later, the defendant consented to a police search of his storage unit wherein inculpatory evidence was found. The court held that the consent was attenuated from the misconduct because the purpose of the police misconduct was safety, not obtaining consent, and because the consent was removed temporally and circumstantially from the misconduct. *Id.* at 1273–74.

*Thurman* reaffirmed that the primary goal of an attenuation analysis is to "deter the police from engaging in illegal conduct even though that conduct may be followed by a voluntary consent." *Id.* at 1263. The attenuation factors balance the burdens imposed by excluding evidence against the effectiveness of its exclusion to deter misconduct. *Arroyo*, 796 P.2d at 688. "The nature and degree of the illegality will usually be inversely related to the effectiveness of time and intervening events to dissipate the presumed taint." *Thurman*, 846 P.2d at 1264. Where "the purpose of the misconduct was to achieve the consent, suppression of the resulting evidence clearly will have a deterrent effect." *Id.* On the other side, "[t]he deterrent value of suppressing evidence seized following police illegality is negligible where the subsequent consent to search is substantially separated either temporally or circumstantially from that illegality." *Id.* This balancing necessitates consideration of all factors without giving any of them dispositive weight. *See id.*

In the present case, we are again called upon to consider an improper traffic stop. The State argues that the court of appeals erred because it ruled that close temporal proximity dispositively established exploitation. We agree that temporal proximity is not dispositive but do not reverse because we conclude that the evidence is otherwise tainted.

The court of appeals ruled that the short time lapse between the stop of the vehicle at the roadblock and the officer's request to search the vehicle established exploitation. *Shoulderblade*, 858 P.2d at 1052.[1] A brief time lapse between a Fourth Amendment violation and consent often indicates exploitation because the effects of the misconduct have not had time to dissipate. *See United States v. Melendez–Garcia*, 28 F.3d 1046, 1055 (10th Cir.1994) (because only seconds, or at most minutes, separated illegality and consent, consent was tainted); *Sims*, 841 P.2d at 10 (close proximity of consent indicated it was tainted). However, temporal proximity is merely a circumstance surrounding these events. It does not describe their relationship. For these reasons, the temporal proximity factor is sometimes called the least probative. *See, e.g., State v. Reffitt*, 145 Ariz. 452, 459, 702 P.2d 681, 688 (1985) (en banc).

A brief interval between an improper traffic detention and a consent to search does not *always* require suppression of the evidence obtained from the search. *See, e.g., United States v. Kelley*, 981 F.2d 1464, 1471–72 (5th Cir.) (only few minutes elapsed, but evidence was attenuated from Fourth Amendment violation), *cert. denied*, —— U.S. ——, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993). In the context of a traffic stop, a brief encounter is generally desirable and expected. A prolonged detention, rather than dissipating an impropriety, would more likely manifest an abuse. Granting close temporal proximity dispositive weight essentially establishes a per se rule excluding all evidence obtained subsequent to an improper stop. We hold that temporal proximity alone is

---

1. *State v. Small*, 829 P.2d 129, 132 (Utah Ct. App.), *cert. denied*, 843 P.2d 1042 (Utah 1992), expressly relied on the prior roadblock decision of *State v. Sims*, 808 P.2d 141, 151 (Utah Ct.App. 1991), which ruled, "The consent was obtained within minutes of the illegal stop, and not even under our clear error standard of review could the trial court find enough time between the stop and the grant of consent to attenuate the relationship between the two."

insufficient to establish exploitation. All factors should be evaluated. *See United States v. Sandoval*, 29 F.3d 537, 543 (10th Cir.1994); *Kelley*, 981 F.2d at 1471.

In the present case, temporal proximity is not dispositive, but it does indicate that the illegal roadblock was exploited to gain consent. After stopping the car, an officer checked Shoulderblade's and Small's driver's licenses by radio dispatch. While awaiting a response, the officer leaned in the car window and promptly requested consent to search the vehicle. Shoulderblade was not free to leave. His license had not been returned. The officer could not explain to the court why he asked to search the vehicle and did not explain to Shoulderblade that his request could be declined. These are important factors in our evaluation. *See Sims*, 841 P.2d at 10; *United States v. McSwain*, 29 F.3d 558, 563 (10th Cir.1994). On these facts, it is apparent that the officer exploited the detention to gain permission to search the vehicle.

We next consider the purpose and flagrancy of the police conduct. The State concedes that Shoulderblade's Fourth Amendment rights were violated but argues that they were not purposely violated because, at the time, this type of roadblock was arguably constitutional. It correctly notes that in 1988, when the roadblock occurred, neither the United States Supreme Court nor any Utah court had held such roadblocks unconstitutional. Of those courts which had addressed the issue, some had held similar roadblocks to be constitutional, *see, e.g., United States v. Corral*, 823 F.2d 1389, 1392 (10th Cir.1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988), while others had held them to be unconstitutional, *see, e.g., State v. Boyanovsky*, 304 Or. 131, 743 P.2d 711, 712 (1987); *State v. Parms*, 523 So.2d 1293, 1301–03 (La.1988). The police acted in the face of this uncertainty.

 However, "[s]earches conducted 'outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arroyo*, 796 P.2d at 687 (quoting *Katz v.*

*United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). The State bears the burden of showing that its conduct was justified. *Arroyo*, 796 P.2d at 687. The State has failed to meet this burden. The roadblock in question was a suspicionless, investigatory roadblock. All vehicles were stopped and their occupants questioned. No articulable, individualized suspicion of wrongdoing was present. Nor were there exigent circumstances that could justify an immediate search, because the roadblock was planned in advance. *See Sims*, 841 P.2d at 9.

 The State justifies the roadblock by noting the uncertainty of its constitutionality. However, uncertainty in the law does not justify an encroachment upon Fourth Amendment guarantees. Allowing every ambiguity to be an exception to constitutional guarantees would eviscerate these very guarantees. In the face of uncertainty, the police could have sought prior judicial approval. Instead, they resolved all ambiguities most favorably to their own designs. The roadblock was planned in advance and coordinated between law enforcement agencies. The police intentionally seized upon an ambiguity to justify what they otherwise could not do. In sum, the police purposely conducted a roadblock without justifiable reasons.

The police conduct was also purposeful with the aim of obtaining consent to search vehicles. A stated purpose of the roadblock was to stop cars and look for any criminal activity. When Shoulderblade was stopped, the officer said that everything appeared "entirely lawful," yet he nevertheless took the opportunity to lean in the window and request to search the car. Making the request under these circumstances shows that a purpose of the traffic stop was to exploit the opportunity to ask for consent. *Cf. McSwain*, 29 F.3d at 563; *see also Sims*, 841 P.2d at 10. The incentive present in this case to violate constitutional guarantees by seizing upon an ambiguity and then using that violation to obtain consent to search is precisely the type of incentive that must be removed by excluding evidence obtained thereby. *See Elkins*, 364 U.S. at 217, 80 S.Ct. at 1444. *See generally Thurman*, 846 P.2d at 1264. This is particularly true here,

where the police could and did carefully plot their conduct. The utility of applying the exclusionary rule to deter police misconduct would be of less value where circumstances require prompt, unplanned action.

Finally, there are no intervening circumstances present in this case to attenuate the illegal traffic stop from Shoulderblade's consent to search. The presence of intervening circumstances may attenuate consent from police misconduct. For example, the independent discovery of additional inculpatory evidence giving the police probable cause to arrest an individual can attenuate a previous improper arrest from a subsequent confession by the accused. *E.g., United States v. Cherry,* 794 F.2d 201, 206 (5th Cir.1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987). Likewise, an individual's response to police misconduct, such as fleeing or attacking an officer, can also intervene to break the connection between police lawlessness and later-discovered evidence. *See United States v. Bailey,* 691 F.2d 1009, 1016–17 (11th Cir.) (en banc), *cert. denied,* 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983); *United States v. Nooks,* 446 F.2d 1283, 1288 (5th Cir.), *cert. denied,* 404 U.S. 945, 92 S.Ct. 299, 30 L.Ed.2d 261 (1971). Stated broadly, official conduct violating the Fourth Amendment can be attenuated from later-acquired evidence where intervening circumstances establish an independent basis for its acquisition. Numerous courts have applied this principle. *See, e.g., United States v. Waupekenay,* 973 F.2d 1533, 1537–38 (10th Cir.1992); *Cherry,* 794 F.2d at 206; *United States v. King,* 724 F.2d 253, 256 (1st Cir.1984); *Bailey,* 691 F.2d at 1016–17; *State v. Yeates,* 112 Idaho 377, 384, 732 P.2d 346, 353 (Ct.App.1987). Typically, courts have considered situations in which probable cause served as an intervening circumstance, but where reasonable suspicion arises, it may also intervene to attenuate the granting of consent from police illegality.

In the present case, one reaction by the passenger, Small, did attract the officer's attention. When the officer asked for personal identification, he observed Small stuff a clear plastic sandwich bag between the front bucket seats. The officer did not observe the contents of the bag. Although Small's action attracted the officer's attention, it did not create a reasonable suspicion. People often take plastic sandwich bags on long trips for many lawful purposes. Seeing one without being able to ascertain its contents does not raise a reasonable suspicion capable of removing the taint of the illegal roadblock. Thus, no intervening circumstances attenuated the consent from the illegality.

Because the temporal proximity and apparent purpose of the traffic stop indicate exploitation of the illegal roadblock with no intervening circumstances, the consent to have the vehicle searched was not sufficiently attenuated to dissipate the taint of the illegal roadblock. Accordingly, we affirm the court of appeals' reversal and remand to the trial court.

Affirmed.

Having disqualified himself, RUSSON, J., does not participate in this case.

HOWE, Justice, dissenting:

The majority correctly states that "[t]he attenuation analysis evaluates the relationship between official misconduct and subsequently discovered evidence to determine if excluding the evidence *will effectively deter future illegalities.*" (Emphasis added.) In applying that standard, I conclude that the evidence in this case should not be excluded. Therefore, I dissent.

The United States Supreme Court recently reaffirmed that "[t]he exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." *Arizona v. Evans,* ── U.S. ──, ──, 115 S.Ct. 1185, 1191, 131 L.Ed.2d 34 (1995) (citing *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 3411–12, 82 L.Ed.2d 677, 687 (1984); *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561, 571 (1974)); *see also State v. Thurman,* 846 P.2d 1256, 1263 (Utah 1993); *State v. Arroyo,* 796 P.2d 684, 689 (Utah 1990). Where " 'the exclusionary rule does not result in appreciable deterrence, then, clearly, its use ... is unwarranted.' " *Evans,* ── U.S. at ──, 115 S.Ct. at 1191

(quoting *United States v. Janis*, 428 U.S. 433, 454, 96 S.Ct. 3021, 3032, 49 L.Ed.2d 1046, 1060 (1976)).

In *Evans*, a police officer pulled a car over for a traffic violation. A computer inquiry indicated that there was an outstanding warrant on the driver. *Id.* at ——, 115 S.Ct. at 1188. The officer placed the driver under arrest, and a search incident to that arrest turned up a bag of marijuana. *Id.* The police later discovered that the warrant upon which the arrest was based had been quashed seventeen days prior to the arrest. However, due to an error by a court clerk, the computer record had not been updated. *Id.* The State charged the driver with possession of marijuana, even though it conceded that the arrest violated the Fourth Amendment. *Id.* at ——, n. 1, 115 S.Ct. at 1189 n. 1. The driver sought to suppress the evidence.

The United States Supreme Court recognized that "the issue of exclusion is separate from whether the Fourth Amendment has been violated ... and exclusion is appropriate only if the remedial objectives of the rule are thought most efficaciously served." *Id.* at 1192–93 (citing *Leon*, 468 U.S. at 906, 104 S.Ct. at 3412; *Calandra*, 414 U.S. at 348, 94 S.Ct. at 619–20). The Court likened the computer error to other cases where the illegality arose because a court later invalidated a search warrant or a statute upon which the police had relied in good faith—suppression would have no deterrent value. *Id.* —— U.S. at ——, 115 S.Ct. at 1191–93; *see Leon*, 468 U.S. at 922, 104 S.Ct. at 3420; *Massachusetts v. Sheppard*, 468 U.S. 981, 990–91, 104 S.Ct. 3424, 3428–29, 82 L.Ed.2d 737 (1984); *Illinois v. Krull*, 480 U.S. 340, 349, 107 S.Ct. 1160, 1166, 94 L.Ed.2d 364 (1987). The Court concluded that the exclusionary rule did not require suppression of the marijuana because "the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction." *Id.* —— U.S. at ——, 115 S.Ct. at 1193.

This rationale is applicable here. It is now clear that the 1988 roadblock at which Shoulderblade was stopped was constitutionally infirm. *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 453–54, 110 S.Ct. 2481, 2487, 110 L.Ed.2d 412, 422–23 (1990); *Sims v. State Tax Comm'n*, 841 P.2d 6, 14–15 (Utah 1992) (plurality opinion). At the time of the roadblock, however, no decision from either the United States Supreme Court or a Utah appellate court had held such roadblocks illegal. In fact, the roadblock was legal under a then-existing line of cases from the Tenth Circuit Court of Appeals. *See United States v. Corral*, 823 F.2d 1389, 1392 (10th Cir. 1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988); *United States v. Lopez*, 777 F.2d 543, 547 (10th Cir.1985); *United States v. Obregon*, 748 F.2d 1371, 1376 (10th Cir.1984); *United States v. Prichard*, 645 F.2d 854, 857 (10th Cir.), *cert. denied*, 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981). Utah is in the Tenth Circuit.

In *Corral*, an officer approached a truck stopped at a New Mexico roadblock and detected the odor of marijuana. *Corral*, 823 F.2d at 1390. The officer had the driver pull over to the side of the road, after which the passenger admitted to smoking marijuana. *Id.* at 1391. The officers sought and obtained consent to search the truck and eventually discovered approximately 474 pounds of cocaine. *Id.* at 1392. The Tenth Circuit upheld the constitutionality of the roadblock:

> The purpose of the roadblock set up by Officers Denton and Frisk was to check driver's licenses, vehicle registrations and proof of insurance. This was a permissible and lawful purpose. The roadblock was set up with the knowledge and consent of the officers' supervisor. It did not involve a single, random or selective stop chosen at the officers' discretion.... Rather, the roadblock as implemented consisted of the stopping of every vehicle heading east on State Road 62/180 with the exception of the local supermarket delivery trucks which were permitted to pass uninspected for articulated and legitimate reasons. Hence, this roadblock was established in a systematic manner to stop vehicles in a pattern which protected the public from the officers' unbridled discretion.
>
> We hold that the roadblock passed constitutional muster.

*Id.* The roadblock in the instant case was similarly limited, with comparable measures

to protect the public from the officers' unbridled discretion.

" 'The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right.' " *Thurman,* 846 P.2d at 1263 (quoting *Brown v. Illinois,* 422 U.S. 590, 612, 95 S.Ct. 2254, 2266, 45 L.Ed.2d 416, 432 (1975) (Powell, J., concurring); *Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182, 194 (1974)). " '[E]vidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' " *Leon,* 468 U.S. at 919, 104 S.Ct. at 3419 (quoting *United States v. Peltier,* 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374, 384 (1975)). Because the roadblock that resulted in the stop of Shoulderblade was proper under then-existing case law, the illegal police conduct was not willful or negligent, let alone flagrant or purposeful. The officers here had no knowledge—nor could they properly be charged with the knowledge—that the search was unconstitutional. They acted in good faith and were entitled to rely upon the most applicable case law available. We should not expect these officers to question the judgment of the Tenth Circuit that had repeatedly approved this type of roadblock. Neither should we punish these officers for not accurately predicting what later courts would decide regarding the constitutionality of this practice. Invoking the exclusionary rule will have no deterrent effect on the officers; they will continue and should continue to rely on applicable law and should be held blameless if that law is later invalidated.

Admittedly, there is an absence of a temporal break or other intervening circumstance between the improper stop and the consent to search. However, these factors are also based on the deterrence principle. *Thurman,* 846 P.2d at 1264. Where no deterrent effect will be felt, these factors do not require application of the exclusionary rule, which " 'is calculated to prevent, not to repair.' " *Brown,* 422 U.S. at 599, 95 S.Ct. at 2260 (quoting *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, 1677 (1960)). This is a case where strict adherence to the rule imposes greater cost on the legitimate demands of law enforcement and on society's interest in placing all relevant evidence before the jury than can be justified by the rule's deterrent purposes.

I would reverse the court of appeals' decision and affirm defendant's conviction.